T. Lincoln KERNEY, II,
Plaintiff-Appellant,

v.

FORT GRIFFIN FANDANGLE
ASSOCIATION, INC., et al.,
Defendants-Appellees.

No. 78–3599.

United States Court of Appeals,
Fifth Circuit.

Aug. 22, 1980.

B. Prater Monning, III, Dallas, Tex., Richard M. Ticktin, New York City, for plaintiff-appellant.

Glandon, Erwin, Baker, Choate & Elmore, William F. (Pete) Baker, Abilene, Tex., for defendants-appellees.

Filmore & Camp, Inc., John P. Camp, Patrick H. O'Neill, Richard L. Griffith, Fort Worth, Tex., for Robert W. Williams.

Garrett, Settle & Callaway, Rufus S. Garrett, Jr., J. Robert Green, Jr., Fort Worth, Tex., for Griffin Fandangle Ass'n, Inc.

Before MORGAN, CHARLES CLARK and TATE, Circuit Judges.

CHARLES CLARK, Circuit Judge:

On July 26, 1976, T. Lincoln Kerney, II, attended a theatrical event in Shackelford County, Texas, known as the Fort Griffin Fandangle. One of the Fandangle's most memorable acts, regrettably for Kerney, was the presentation known as the "fire in the anvil," in which an explosive charge was detonated under an iron anvil to send it skyward with a resounding blast, purporting to re-create the fireworks enjoyed by the Texas pioneers of old. The day Kerney attended, however, "something went wrong." Rather than being propelled skyward, fragments of the anvil flew into the audience, and a chunk weighing several pounds was blown into Kerney's head.

Alleging that his injuries resulted from negligence and gross negligence in performing the "fire in the anvil" and in failing properly to advise and protect the public, Kerney sued the Fort Griffin Fandangle Association, Inc. ["Association"],[1] producer of the Fandangle, its officers, directors, shareholders, and members, and the owner of the premises on which the accident occurred, seeking compensatory and punitive damages. Kerney filed his action in the United States District Court for the Northern District of Texas, invoking the court's diversity jurisdiction. Because he was unable to learn the names of all the officers, directors, shareholders, or members of the Association, he sued by name those defendants whose names he knew and added as fictitious defendants John Doe, Richard Roe, John Roe, Richard Doe, Michael Moe, and Carl Coe. Alleging that all defendants were residents of Texas, the complaint asserted that Kerney would seek leave to amend, substituting real persons for the fictitious defendants, as soon as he learned the true names of the appropriate parties.

The defendants filed motions to dismiss for lack of jurisdiction over the subject matter of the action, asserting that because Kerney had alleged residence, not citizenship, and because he could not ascertain the citizenship of parties whose identity he did not know, he had not affirmatively established jurisdiction.[2] After a hearing, the district court granted the defendants' motions, concluding that the record failed to show diversity of citizenship. The court dismissed the action without prejudice, granting Kerney the right to amend the

---

1. The complaint alleged that in spite of its name, the Fandangle Association was at the time of the accident not a corporation at all but an unincorporated association, as its corporate existence had terminated pursuant to a term of its charter. Subsequent to the filing of the action, according to the complaint, the Association reincorporated under the same name. For the purposes of the motion to dismiss, we treat the allegations of the complaint as true. In any event, the Association bases its arguments on appeal on the assumption that it was an unincorporated association.

2. The motions also asserted lack of personal jurisdiction, failure to state a claim upon which relief can be granted, insufficiency of service of process, and the bar of the statute of limitations as other grounds for dismissal.

pleadings to show jurisdiction and to move for reinstatement.

Kerney subsequently moved for leave to file an amended complaint and for reinstatement. The amended complaint abandoned the use of the fictitious parties and instead purported to bring a class action against the members of the Fandangle Association as provided by Rule 23.2, Fed.R. Civ.P., entitled "Actions Relating to Unincorporated Associations." He named as class representatives those nine officers and members of the Association whose names he had been able to learn. The complaint alleged that each of the nine was a citizen of Texas and that Kerney was a citizen of New York. The district court denied Kerney's motion for leave to file the amended complaint and for reinstatement, without giving any reason.[3]

■ Kerney appeals from both orders. The first order—dismissing Kerney's original complaint with leave to amend and to move for reinstatement—was proper. Kerney did not satisfy the burden, always on plaintiff, of establishing diversity of citizenship between the plaintiff and all defendants, for he alleged only the residence and not the citizenship of the parties. An allegation of residence is insufficient to establish diversity jurisdiction. The plaintiff must allege citizenship. *Delome v. Union Barge Line Co.*, 444 F.2d 225 (5th Cir.), *cert. denied*, 404 U.S. 995, 92 S.Ct. 534, 30 L.Ed.2d 547 (1971). This appeal does not present the question whether Kerney could have satisfied his burden by alleging that the fictitious parties were citizens of Texas.[4] The first order appealed from merely dismissed, with leave to amend, a complaint totally lacking in allegations of citizenship. Regardless of the propriety of fictitious-party practice in federal court and its effect on diversity, this dismissal was correct.

The amended complaint attempted to sue the Association itself and named nine defendants both as trustees for the benefit of creditors and as representatives of the class of all members of the Association. It alleged that the use of the class action device was authorized by rule 23.2, Fed.R.Civ.P., or in the alternative by the general class action rule, rule 23.

Rule 23.2 provides, in pertinent part: An action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties may be maintained only if it appears that the representative parties will fairly and adequately protect the interest of the association and its members.

The advisory committee note to rule 23.2 states that "[a]lthough an action by or against representatives of the membership of an unincorporated association has often been viewed as a class action, the real or main purpose of this characterization has been to give 'entity treatment' to the association when for formal reasons it cannot sue or be sued as a jural person under rule 17(b)." According to rule 17(b), the law of the forum state determines capacity to sue or be sued.

In light of the advisory committee note, the defendants contend, Kerney may not use rule 23.2 to bring a class action against the members of the Association because Texas law permits an unincorporated association to sue and be sued. Tex.Rev.Civ. Stat.Ann. art. 6133 (Vernon 1970). The defendants urge that we hold that rule 23.2 may be used only where the law of the

---

**3.** The district court's order denying Kerney's motion inadvertently purported to rule in addition on some related motions in a separate case. In a later, corrective order, the district court set aside its earlier order and denied Kerney's motions nunc pro tunc "[f]or the reasons set out in [the court's] Memorandum filed in connection [t]herewith." Unfortunately, that memorandum was never made part of the record on appeal, so those reasons remain a mystery.

**4.** We note that in spite of Kerney's representations to the contrary, he could have made such an allegation consistently with rule 11. Given the location of Shackelford County and the predictable affiliation the Association's members would enjoy with their community, Kerney had a basis for alleging that all defendants were citizens of Texas.

forum state does not permit an unincorporated association to sue or be sued. We decline.

Rule 23.2 is a relatively little-used provision, but its purpose was clearly to enlarge, not contract, the authorization for class actions against unincorporated associations. Before the adoption of rule 23.2 in 1966, rule 23 afforded the basis for class actions against the members of an unincorporated association where the plaintiff sought to hold the individual members personally liable. *E. g., Oskoian v. Canuel*, 269 F.2d 311 (1st Cir.1959). Indeed such was generally the only relief available under the common-law tradition that a voluntary association of individuals created only common rights and liabilities, not liabilities of the association itself. Numerous jurisdictions have given entity status to these associations, allowing them to sue and be sued. But enough states had not done so by 1966 to persuade the advisory committee, in revising the class action amendments, to ensure that unincorporated associations could be the subject of class actions even where state law did not grant capacity to sue or be sued. In so doing, the drafters could not have intended either to abridge or expand the scope of substantive rights and liabilities under state law. The rule does not speak to the determination whether only the members of the association, or only the association itself, or both the association and its members may be held liable for its wrongs. That determination rests, as it always has, with the state rule of decision in diversity cases.

Although Texas law permits entity suits against unincorporated associations, it specifically provides that the grant of entity status does not "affect nor impair . . . the right of any person to sue the individual stockholders or members." Tex.Rev.Civ. Stat.Ann. art. 6138 (Vernon 1970). The reason why a plaintiff might elect to sue the members rather than the association is clear: under article 6136, Tex.Rev.Civ.Stat. Ann. (Vernon 1970), judgment rendered on an entity suit may be enforced against only the association's property and not that of the individual members. If the plaintiff sues the members individually, on the other hand, he can satisfy his judgment from both individual and association property (although he must first exhaust association property in satisfaction of the judgment). Tex.Rev.Civ.Stat.Ann. art. 6137 (Vernon 1970).

■ Although inartfully drafted, Kerney's amended complaint sought to sue the individual members and to recover against both individual and joint property. Rule 23.2 clearly authorizes a class action against the members of an unincorporated association in Texas.[5]

Given that the amended complaint properly brought a class suit, it alleged citizenship sufficient to establish diversity by alleging that the named defendants were citizens of Texas, for a class is considered to be diverse from the opposing party if the named parties are diverse. *Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921); *Calagaz v. Calhoon*, 309 F.2d 248 (5th Cir.1962).[6]

**5.** We do not decide what effect a state rule granting entity status and precluding recovery against individual members would have on rule 23.2. *Compare Underwood v. Maloney*, 256 F.2d 334 (3d Cir.1958), *cert. denied*, 358 U.S. 864, 79 S.Ct. 93, 3 L.Ed.2d 97 (1959) (holding that because Pennsylvania law forbids class actions against unincorporated associations, a federal court sitting in diversity cannot entertain one), *with* 7A C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1861, at 458–60 (suggesting that *Underwood* does not survive the adoption of rule 23.2). Rule 23.2, as a Federal Rule of Civil Procedure, is presumptively procedural, so that a federal court can refuse to apply it "only if the Advisory Committee, [the Supreme] Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions." *Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8, 16 (1965).

**6.** Had Kerney attempted to sue the Association as an entity, he would have had to show the citizenship of all the members thereof, to be sure. *United Steelworkers of America v. Bouligny*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965). Rule 23.2, promulgated the year after *Bouligny*, created a new avenue for establishing diversity jurisdiction in suits by or against an association when the citizenship of all its

■ The defendants also contend that a court could not, consistently with due process, impose individual liability on members of a defendant class. Essentially, they would contend that a defendant class action is unconstitutional. We disagree. Both rules 23 and 23.2 expressly contemplate the possibility of defendant class actions and require that the representative parties fairly and adequately protect the interest of the class members. In permitting a class action to proceed, a district court determines adequacy of representation as a threshold matter. Moreover, the court has the power and the duty to ensure that all defendants be given adequate notice of the action and an opportunity to present individual defenses if desired. Should the district court fail to afford any defendant due process, he would be entitled to have an adverse judgment set aside or reversed on appeal. It is therefore premature for defendants to object to a lack of personal notice and service on the unnamed defendants.

The defendants raise two other grounds in support of the trial court's refusal to allow reinstatement, which we address briefly. They assert that the first amended complaint is barred by the statute of limitations, because it was not filed within two years of the date of injury as required by the relevant Texas statute, Tex.Rev.Civ. Stat.Ann. art. 5526. According to rule 15(c), Fed.R.Civ.P., however, if the claim in the amended complaint arises out of the same conduct, transaction, or occurrence set out in the original complaint,

[a]n amendment changing the party against whom a claim is asserted relates back [to the date of the original pleading] if . . . ., within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him.

If the complaint relates back to the date of the original complaint, it is not time-barred.

The amended complaint differed from the original complaint in only two respects: it dropped the fictitious defendants, and it added class allegations, making the nine named defendants representatives of a class as well as individual defendants. The amended complaint named no parties whom the original complaint had not named.

■ Such an amendment does not precisely fall within the rubric of rule 15(c), but the policy of the rule dictates that it relate back to the original complaint. As the advisory committee note to the 1966 amendments (adding rule 15(c)) stated, "relation back is intimately connected with the policy of the statute of limitations." A claimant should not be denied the opportunity of proving what is essentially the same case if the defendant has not been prejudiced by the amendment. Therefore, we hold that an amendment that merely changes the status of individual defendants to class representatives without changing the ultimate liability sought to be imposed relates back to the date of the original complaint if the named parties will not be prejudiced in maintaining a defense as class representatives because of the delay between the original and amended pleadings.

In this instance, because the plaintiff alleges that all members of the class are individually liable to him, no named defendants should find their defense of the class to be different from their defense as individuals. Nonetheless, should any of the named defendants assert on remand that they have

members was not or could not be alleged. The defendants nowhere contend that any of the unnamed defendants are citizens of New York or indeed are not citizens of Texas. They do not contend that Kerney has employed the class action device as a sham. We do not decide whether a party may maintain a class suit under rule 23.2 when the opposing party can establish that the plaintiff elected to bring a class action rather than an entity suit only in order to select diverse parties as named class representatives and thereby create jurisdiction and not in order to obtain different relief.

suffered such prejudice, the district court may hear and determine whether the plaintiff can establish that no such prejudice exists. The unnamed members of the class cannot object to their addition by amendment after the statute of limitations had run. In federal court, timely filing of a class action generally requires only that the complaint be filed within the limitation period. If the state statute overrides rule 3 and requires both filing of the complaint and service of process within the statutory period, *see Walker v. Armco Steel Corp.,* —— U.S. ——, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), service on the named defendants is sufficient. In either event, unnamed defendants receive no notice until and as the district court so orders. In this case, Kerney both filed his complaint and served the named defendants within the statutory period. Absent prejudice, then, the amended complaint relates back to the date of the original complaint and is timely.

■ The defendants finally contend that service of process was inadequate. Kerney did not attempt any additional service of process in connection with the amended complaint but relies on the service in the original complaint. Service on that complaint was made on the eight named defendants personally or by mail and on the Association by serving its president personally. Kerney attempted to serve the fictitious defendants as members of the Association by publication pursuant to rule 4(d), Fed.R.Civ.P., and rules 109 and 111, Tex.R. Civ.P. Defendants assert that this latter service did not comport with the requirements of the Texas rules because rule 111 was inappropriate and because the affidavit filed in connection with rule 109 was improper. The named defendants have never objected to service on them personally and have appeared in the action. The service on the fictitious defendants is irrelevant because it is now surplusage to the maintenance of the class action. The defendants' objections to service of process are without merit.

Although Kerney's original complaint was properly dismissed, we conclude that the amended complaint properly brought a class action and sufficiently established jurisdiction. The district court should not have refused leave to file the amended complaint.

REVERSED AND REMANDED.