**Linda SANDERS–BURNS, Individually and as an heir of the Estate of Anthony Demille Sanders, deceased, Plaintiff–Appellant,**

v.

**CITY OF PLANO; Joseph Cabezuela, Police Officer, Defendants–Appellees.**

No. 08–40459.

United States Court of Appeals, Fifth Circuit.

Aug. 7, 2009.

Michael R. Dezsi (argued), Paul W. Broschav, Fieger, Fieger, Kenney, Johnson & Giroux, Southfield, MI, for Sanders–Burns.

Paul King Pearce, Jr. (argued), Timothy Allen Dunn, Matthews, Stein, Shields, Pearce, Knott, Eden & Davis, Dallas, TX, for City of Plano.

James Thomas Jeffrey, Jr. (argued), Law Offices of Jim Jeffrey, Arlington, TX, Paul King Pearce, Jr. (argued), Matthews, Stein, Shields, Pearce, Knott, Eden & Davis, Dallas, TX, for Cabezuela.

Before KING, STEWART and SOUTHWICK, Circuit Judges.

CARL E. STEWART, Circuit Judge:

On February 10, 2005, Officer Joseph Cabezuela ("Cabezuela") responded to an altercation involving Anthony Sanders ("Sanders") and his neighbor. Cabezuela handcuffed Sanders and left him on his stomach face down against the floor while he questioned others in the home regarding the altercation. Sanders died from positional asphyxia. On October 17, 2006, Sanders's mother, Linda Sanders–Burns ("Sanders–Burns"), filed a complaint under 42 U.S.C. § 1983 against Cabezuela and the City of Plano, Texas (jointly "Defendants") alleging a violation of her son's constitutional rights, which resulted in his death. Sanders–Burns's complaint named Cabezuela only in his official capacity, instead of his individual capacity. After learning of the mistake, she moved to amend her complaint under Federal Rule of Civil Procedure ("Rule") 15(c). The district court granted the motion. On October 31, 2007, Cabezuela asked the district court to dismiss Sanders–Burns's claims because the statute of limitations expired before Sanders–Burns amended her complaint. On March 14, 2008, the district court granted Cabezuela's motion to dismiss, finding that the amended complaint did not relate back to her original complaint and was time barred by the statute of limitations. Sanders–Burns's original complaint also alleged that the City of Plano ("Plano") failed to adequately train Cabezuela as to the deadly risks of cuffing an individual lying face down. On March 31, 2008, the district court granted Plano's motion for summary judgment and found, as a matter of law, that there was no question of fact as to whether Plano failed to adequately train its officers. Sanders–Burns appeals. We REVERSE in part and AFFIRM in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Cabezuela attended and received training at the North Central Texas Council of Governments' Regional Police Academy ("COG Academy") in Arlington, Texas from June 2002 to October 2002, when he graduated. COG Academy's training program is certified by the Texas Commission on Law Enforcement Officer Standards and Education as a training program that must be completed by individuals before they can be licensed as a police officer in Texas. While at COG Academy, Cabezuela was trained in dealing with persons who are at a high risk of custodial death due to intoxication (alcohol or drug), violent or bizarre behavior, upper body obesity, or being handcuffed in a prone position (i.e., lying face down). The training program did not specifically use the term "positional asphyxia." The training included instruction on how to handcuff, monitor the well-being of, and search persons handcuffed in a "prone position." At the time of the incident leading to the instant proceedings, Cabezuela had received more than 944 hours of training. As part of Cabezuela's training, he was instructed to promptly call 9-1-1 or summon EMS personnel after determining that a person, detainee, or arrestee is in need of immediate medical care.

On February 10, 2005, Cabezuela, working alone in a marked police car, received a radio run to proceed to 1816 Fairfield Dr. in Plano concerning a disturbance involving a homeowner and a neighbor. Cabezuela arrived at 7:54 p.m., approached the front door of the home, and observed Carlos Mercado ("Mercado"), the homeowner, restraining Sanders. Sanders was face down on the floor just inside the home. Cabezuela entered the home and ordered Mercado to get off Sanders. Cabezuela then handcuffed Sanders and ordered him

to remain on the floor, face down with his hands restrained behind his back. Neither party disputes that Sanders was alive when Cabezuela handcuffed him.

Cabezuela, standing near Sanders, then began questioning Mercado and other persons in the home regarding the incident. Cabezuela learned that Sanders entered the home yelling profanities, began removing his belt or pants, and then began fighting Mercado. Mercado explained that he subdued Sanders by placing him in a headlock on the floor with Mercado laying on top of him. Mercado estimated that they were in that position for approximately ten minutes before Cabezuela arrived. While Cabezuela questioned Mercado, Sanders began to "aggressively kick his legs." Eventually, Sanders stopped moving and Cabezuela nudged Sanders with Cabezuela's foot and asked Sanders if he was okay. Sanders moved his head and mumbled something that Cabezuela did not understand, and Cabezuela continued speaking with Mercado.

Officer Jeff King ("King") arrived on the scene at 7:59 p.m. As King entered the house, Cabezuela realized Sanders might not be breathing. EMS was summoned by the officers at 8:00 p.m., and King went to his police car to obtain equipment to aid in the resuscitation and CPR of Sanders. When King returned the Fire Department had arrived (at 8:04 p.m.), and Cabezuela was in the process of removing the handcuffs from Sanders. Firefighters found no signs of life, Sanders was taken to the Medical Center of Plano at 8:23 p.m, and he was pronounced dead at 8:45 p.m. The death was ruled a homicide, and the cause of death was "sudden death, chest compression and restraint," otherwise known as positional asphyxia.

At his deposition, Cabezuela testified that he never received training from the Plano Police Department concerning the dangers of the medical condition termed positional or compression asphyxia. Plano provided no documentary evidence demonstrating that they provided training to their officers concerning positional or compression asphyxia.

On October 17, 2006, Sanders–Burns filed suit under § 1983 claiming that Cabezuela and Plano violated her son's rights under the Fourth and Fourteenth Amendments. Sanders–Burns alleged that Sanders was subjected to the use of excessive force and that Plano and Cabezuela were deliberately indifferent to his medical needs. Sanders–Burns alleged that Plano was "responsible for implementing the policies, procedures, practices and customs, as well as for the acts and omissions alleged in this action." The complaint brings suit against Cabezuela in his official capacity, but in the prayer for relief requests judgment against the "defendants" in their individual capacity.

On July 7, 2007, Cabezuela filed a motion to dismiss because he was sued only in his official capacity. The district court granted the motion, and on July 16, 2007, Sanders–Burns sought leave to amend her complaint to name Cabezuela in his individual capacity. Cabezuela and Plano opposed the motion, but the district court granted the motion. The district court, however, explained that it was not addressing the statute of limitations issue at that time and reserved that issue for disposition through appropriate motion practice. On August 22, 2007, Sanders–Burns filed an amended complaint and jury demand.

On July 31, 2007, while the parties were litigating whether to allow an amended complaint against Cabezuela in his individual capacity, the Defendants filed a motion for summary judgment. The Defendants argued that they did not deprive Sanders of any of his federally secured rights and that they had no custom, policy, or practice that caused Sanders to be deprived of any

of his federally secured rights. The Defendants also stated that they were entitled to immunity from Sanders–Burns's state law claims.

On October 31, 2007, Cabezuela filed a motion to dismiss arguing that Sanders–Burns's amended complaint was time barred because the statute of limitations expired before the amended complaint was filed. Sanders–Burns responded asserting that Rule 15(c) allows a party to amend a pleading after the expiration of the statute of limitations if the amended pleading relates back to the original pleading.

On March 14, 2008, the district court granted Cabezuela's motion to dismiss, finding that the amended complaint was not filed within the statute of limitations period. The court explained that Sanders–Burns was placed on notice of her failure to name Cabezuela in his individual capacity, but also noted that Plano failed to comply with the court's disclosure requirements because it failed to identify Cabezuela in his individual capacity. On March 31, 2008, the district court granted Plano's motion for summary judgment. The court explained that Sanders–Burns provided no evidence that Plano consciously or deliberately omitted positional asphyxia from its training program, and that there was "no evidence in the record from which a reasonable juror could conclude that the City was deliberately indifferent to the rights of its inhabitants with respect to training its police officers on positional asphyxia." Sanders–Burns appeals.

## II. DISCUSSION

### A. Sanders–Burns's Amended Complaint

■ Whether a plaintiff may amend a complaint changing suit against a defendant in his official capacity to his individual

capacity after the statute of limitations has run is a question of first impression for this Court.

#### 1. Standard of Review

■ We review a Rule 12(b)(6) dismissal *de novo,* accepting all well-pleaded facts as true and reviewed in the light most favorable to the plaintiff. *Piotrowski v. City of Houston,* 51 F.3d 512, 514 (5th Cir.1995). We review a district court's decision to grant or deny a motion to amend for abuse of discretion. *Ayanbadejo v. Chertoff,* 517 F.3d 273, 276 (5th Cir.2008).

#### 2. Rule 15(c)

Whether an amended complaint relates back to an original complaint is governed by Rule 15(c), which states

(1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:

. . . .

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party is brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.[1]

---

1. Rule 15 was amended on December 1, 2007. The amendment did not change the substance of the rule. The district court's order dated March 8, 2008, however, cites to the pre–2007 version of the Rule. Because the changes were merely stylistic, the differences do not effect the outcome in this case.

Thus, for Sanders–Burns to establish that the amended complaint relates back to the original complaint, she must demonstrate that the amended pleading satisfies the elements provided in Rule 15(c)(1)(B)-(C):

> (1) it must arise from the same transaction or occurrence as the original pleading ... and (2) ... the party named in the amended pleading must have both received sufficient notice of the pendency of the action so as not to be prejudiced in preparing a defense, and have known or should have known that but for a mistake of identity the party would have been named in the original pleading.

See STEVEN BAICKER-MCKEE, WILLIAM M. JANSSEN, & JOHN B. CORR, FEDERAL CIVIL RULES HANDBOOK 531–32 (2009).

We previously addressed whether an amended complaint relates back to an original complaint in cases with similar, though distinguishable, facts as those present in the instant case. *See Kerney v. Fort Griffin Fandangle Ass'n,* 624 F.2d 717 (5th Cir.1980); *Kirk v. Cronvich,* 629 F.2d 404 (5th Cir.1980).[2] In *Kerney,* the plaintiff was unable to learn the names of all of the defendants he wanted to bring suit against, so "he sued by name those defendants whose names he knew and added as fictitious defendants John Doe, Richard Roe...." *Kerney,* 624 F.2d at 718. After the statute of limitations had run, the plaintiff filed an amended complaint. The plaintiff's "amended complaint differed from the original complaint in only two respects: it dropped the fictitious defendants, and it added class allegations, making the nine named defendants representatives of a class as well as individual defendants. The amended complaint named no parties whom the original complaint had not named." *Id.* at 721. We concluded that while the amendment did not fall strictly within the rubric of Rule 15(c), the policy rationale of the rule dictated that the amended complaint relate back to the original complaint. *Id.* We reached this conclusion, in part, because the amendment merely changed "the status" of the "individual defendants to class representatives without changing the ultimate liability sought to be imposed." *Id.*

In *Kirk,* the plaintiff initially named the Sheriff's Office as the defendant. After

---

**2.** After *Kerney* and *Kirk,* the Supreme Court decided *Schiavone v. Fortune, a/k/a Time, Inc.,* 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), and addressed the issue of when an amended complaint relates back to the original filing. The Supreme Court outlined a four-factor test that must be satisfied for a court to find that an amended complaint relates back to the original. *Schiavone,* 477 U.S. at 29–30, 106 S.Ct. 2379. Cabezuela argues that *Kirk* was overruled by *Schiavone* and that this Court should use *Schiavone's* four-factor test. But in *Honeycutt v. Long,* this Court explained that *Kirk* was overruled on limited grounds. 861 F.2d 1346, 1352 n. 9 (5th Cir.1988). *Schiavone* rejected only *Kirk's* holding that the period for notice includes a reasonable time to perfect service. *Id.*

Furthermore, the holding in *Schiavone* was superceded by the 1991 amendments to Rule 15(c). In *Jacobsen v. Osborne,* this Court explained that in response to *Schiavone,* Rule 15(c) was amended to change the fourth relation-back factor. 133 F.3d 315, 319 (5th Cir. 1998). In explaining the change to Rule 15(c), the Advisory Committee stated that

> "[i]f the notice requirement is met within the Rule 4(m) period, a complaint may be amended at any time *to correct a formal defect such as a misnomer or misidentification.* On the basis of the test of the former rule, the [Supreme] Court reached a result in *Schiavone v. Fortune* that was inconsistent with the liberal pleading practices secured by Rule 8."

*Id.* (quotation omitted) (emphasis in the original). The *Jacobsen* court went on to utilize the reasoning in *Kirk* in deciding whether "a proposed amendment to a complaint to add new parties relate[d] back to the date of the original complaint, especially for replacing 'John Doe' defendants, thereby defeating a limitations bar as to those putative parties." *Id.* at 317, 320.

the one-year statute of limitations expired, the plaintiff removed the Sheriff's Office and amended the complaint to name the Sheriff individually. *Kirk*, 629 F.2d at 405. We determined that (1) the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading because the amended pleading simply substituted the name of the Sheriff for the Sheriff's Office in the original complaint; (2) the Sheriff had sufficient notice, even though there was no evidence that he had actual knowledge of the action until he was personally served, because when the original complaint "is perfected upon an agent of a party sought to be brought in by amendment, there is adequate notice of the action to that party;" and (3) the Sheriff knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him. *Id.* at 407–08.

While the issue presented in this appeal is a question of first impression for this Court, our sister circuits have addressed the issue, and we find their cases to be instructive. The Seventh Circuit held that a change in suit against someone from their official to individual capacity relates back to the original complaint, while the Sixth and D.C. Circuits held that an amended complaint outside the statute of limitations period did not relate back to the original complaint. *See Hill v. Shelander*, 924 F.2d 1370 (7th Cir.1991); *cf. Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C.Cir.1996); *Lovelace v. O'Hara*, 985 F.2d 847 (6th Cir.1993); *see also Colvin v. McDougall*, 62 F.3d 1316 (11th Cir. 1995).

In *Hill v. Shelander*, Hill's first complaint, filed *pro se*, failed to name Shelander in his individual capacity, and the first and second amended complaints, filed by court-appointed counsel, also named She-

lander only in his official capacity. *Hill*, 924 F.2d at 1371. The plaintiff's second lawyer "recognized the technical error in [Hill]'s second amended complaint and tried to amend it to reflect the proper capacity in which Shelander was to be sued." *Id.* The Seventh Circuit's analysis put great emphasis on the allegations found in the actual complaint and explained that the court should take a "sensible approach to reading a complaint so that suits may be maintained regardless of technical pleading errors." *Id.* at 1373–74. The Seventh Circuit concluded that "Hill's complaint when 'read in its entirety' plainly show[ed] that an individual capacity suit was intended." *Id.* at 1374.

The Seventh Circuit explained that Rule 15(c)[3] serves as a useful guide to "help, not hinder, persons who have a legal right to bring their problems before the courts." *Id.* at 1375 (quotation omitted). The Seventh Circuit then applied the analysis used by this Court in *Kirk* and *Kerney* and concluded that (1) Hill's claims arose out of the original occurrence and merely changed the capacity, not the identity, of the defendant; (2) Shelander knew from the start the nature of the allegations against him and would not be prejudiced defending the merits; and (3) it should have been clear to Shelander that the suit was against him personally for the injuries he inflicted on Hill because Hill sought punitive damages. *Id.* at 1377–78.

In *Lovelace v. O'Hara*, the Sixth Circuit addressed whether the district court erred in allowing Lovelace to amend her complaint, after the statute of limitations had run, to name O'Hara in his individual capacity. *Lovelace*, 985 F.2d at 848–49. The court concluded that there was no question as to whether the original and amended complaints involved the same

---

**3.** The Seventh Circuit decided *Hill* before the 1991 amendments to Rule 15(c), but the amendments do not materially affect the holding in *Hill*.

conduct, but found that O'Hara did not receive notice that he was being sued in his individual capacity until several months after the "120 days allowed for service of the summons and complaint." *Id.* at 850. The Sixth Circuit explained that "[i]t is not too much to ask that if a person or entity is to be subject to suit, the person or entity should be properly named and clearly notified of the potential for payment of damages individually." *Id.* The court found the distinction between an official capacity suit and individual capacity suit to be significant. Because O'Hara may have developed a different legal strategy if he had been aware that he was being sued personally, the court concluded that he did not have sufficient notice under Rule 15(c). *Id.* Furthermore, the court found that O'Hara did not know and should not have known that, but for a mistake in identity, the suit would have been brought against him. *Id.* The court, like in *Hill*, examined the original complaint and found that it "contained a statement that O'Hara acted 'not as an individual,' but 'clearly within the expressed and implied powers of his official capacity.'" *Id.* Thus, the court concluded that O'Hara had no reason to believe that he would be held personally liable or that his personal assets were at stake.

The Eleventh Circuit relied on the reasoning in *Lovelace* when it decided *Colvin v. McDougall.*[4] Colvin failed to indicate in his complaint whether he was suing McDougall in his official or individual capacity. *Colvin,* 62 F.3d at 1317. The Eleventh Circuit explained that the court must examine the complaint and the course of proceedings to determine whether Colvin sued McDougall in his official or individual capacity. *Id.* (citing *Kentucky*

*v. Graham,* 473 U.S. 159, 167–68 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). The court then assessed the pleading and determined that it looked like an official capacity suit. *Id.* Most importantly, Colvin's attorney stated on the record that the suit against McDougall was in his official capacity. *Id.* at 1318. The court noted, however, that McDougall did not raise the defenses of good faith or qualified immunity in his answer and did not indicate an awareness that he was being sued in his individual capacity. *Id.* at 1317–18. The Eleventh Circuit agreed with the Sixth Circuit's conclusion that there is a "big difference" between official capacity and individual capacity suits. *Id.* at 1318.

Finally, in *Atchinson v. District of Columbia,* the D.C. Circuit considered whether the district court abused its discretion when it refused to allow Atchinson to amend his complaint to name a defendant-officer in his individual capacity. 73 F.3d at 424. The court began by looking at the text of the original complaint, which stated that "defendants who are individuals are sued solely in their official capacity." *Id.* In a hearing, Atchinson's attorney reaffirmed that Collins was being sued solely in his official capacity, and only altered course after he realized the case might be dismissed if the claims were only against the defendant-officer in his official capacity. *Id.* The court noted, however, that Atchinson sued for punitive damages and joint and several liability, indicating that the suit was against the defendant-officer in his individual capacity. *Id.* at 425. The court explained that under *Graham,* if the complaint had been "silent as to the capacity in which" the defendant-officer was sued, the points explained

---

4. *Colvin* is distinguishable from the facts in the instant case, but the reasoning employed is helpful in highlighting a point of consensus for the circuits that have addressed the question at issue in this case. *See also, Cupe v. Lantz,* 470 F.Supp.2d 128 (D.Conn.2007) (relying, in part, on the reasoning employed in *Lovelace* and *Colvin*).

above would be relevant, but the complaint specifically stated that Atchinson was suing the defendant-officer in his official capacity. *Id.* Thus, the court rejected Atchinson's assertion that the parties understood the suit to be against the defendant-officer in his individual capacity. The court discussed *Lovelace* and *Hill,* and noted that the defendant-officer argued that if he had known he would be personally liable for damages he would have retained private counsel and conducted discovery differently. *Id.* at 427. The court found the district court's concerns regarding the defendant-officer's choice of counsel and litigation strategy to be well-founded. *Id.* Ultimately, the D.C. Circuit held that for the limited facts present in *Atchinson,* the district court did not abuse its discretion in denying leave to amend. *Id.*

### 3. Analysis

After examining the cases decided by the Sixth, Seventh, Eleventh, and D.C. Circuits, we are convinced that the different outcomes resulted from the specific facts in each individual case. Each opinion provides a detailed analysis of the allegations made in the original complaint, as well as any relevant comments made by the plaintiff's attorneys during the course of the proceedings. This comports with the purpose of Rule 15(c). *See generally,* 3 Edward Sherman & Mary P. Squiers, Moore's Federal Practice—Civil § 15.19 (2009). Therefore, we turn to the specific allegations made in Sanders–Burns's complaint, while keeping in mind the above-mentioned caselaw.

The parties do not dispute that the amended complaint arises out of the same occurrence as that in the original complaint. Fed. R. Civ. P. 15(c)(1)(B). The parties dispute whether (1) Cabezuela had appropriate notice of the action such that it did not prejudice him in preparing his defense and (2) if he knew, or should have known, that the action would have been brought against him but for the mistake in the original complaint. Fed. R. Civ. P. 15(c)(1)(C). A comparison with the facts in *Kirk* is instructive in determining whether Sanders–Burns meets the requirements set out in Rule 15(c)(1)(C).

In *Kirk,* we determined that the Sheriff had sufficient notice, even though there was no evidence that the Sheriff had actual knowledge of the action until he was personally served. Here, Cabezuela had actual knowledge of the action at all times because he was named as a defendant in the original complaint. "[N]otice is sufficient if the newly named party was made aware of the issues in the complaint." *See* Sherman & Squiers, *supra,* at § 15.19[3][c]. Thus, Cabezuela received sufficient notice, and we now turn to whether Cabezuela was prejudiced in preparing his defense.

The evidence of lack of prejudice is two-fold. First, the answer to the complaint filed by the Defendants asserts the affirmative defense of qualified immunity—a defense against an individual capacity lawsuit. The inclusion of the affirmative defense of qualified immunity is important because it suggests that the attorney representing Plano and Cabezuela in his official capacity is likely to have communicated to Cabezuela that he may be joined to the suit in his individual capacity. *See* Sherman & Squiers, *supra,* at § 15.19[3][c] ("In some cases notice may be imputed based on shared legal counsel, on the theory that when an originally named party and a new party are represented by the same attorney, the attorney is likely to have communicated to the new party that he or she may be joined in the action." (citations omitted)); *cf. Colvin,* 62 F.3d at 1317. Second, while we do not discount the Sixth Circuit's concerns regarding the need for plaintiffs to properly name the person or

entity they are suing, Cabezuela is not now precluded from asserting the defense of qualified immunity on remand or from pursuing an individualized litigation strategy in defense of Sanders–Burns's claims against him in his individual capacity. We recognize that the risks to Cabezuela in an individual capacity suit, as opposed to an official capacity suit, are markedly different. He may have chosen to retain private counsel and to pursue a different litigation strategy. On remand, however, Cabezuela may still effectively pursue these avenues and, therefore Cabezuela is not prejudiced.

■ Having determined that Cabezuela had sufficient notice of the action, we must now turn to whether Cabezuela knew, or should have known, that Sanders–Burns's made a "mistake" or rather a strategic decision when she named Cabezuela in his official capacity. Rule 15(c)(1)(C) permits an amended complaint to relate back to the original complaint because

> a legitimate legal claim should not be squelched by a party mistakenly identifying the party to be sued.... The classic example of mistake is misnomer; that is, when a plaintiff misnames or misidentifies a party in its pleadings but correctly serves that party. In these cases, relation back is appropriate because the defendant is already before the court.... In some cases a legal mistake can lead to misnomer, as when a plaintiff names an institutional defendant because of confusion as to whether an individual or an institutional defendant is the proper party, but the individual is properly served and, therefore, has notice of the mistake. In contrast, a conscious choice to sue one party and not another does not constitute a mistake and is not a basis for relation back.

See SHERMAN & SQUIERS, *supra*, at § 15.19[3][d] (citations omitted). A review of the complaint in this case indicates that the error of naming Cabezuela in his individual capacity was an actual mistake, and that Sanders–Burns is not now merely attempting a strategic change by amending her complaint, unlike the plaintiffs in *Colvin* and *Atchinson*.

In *Kirk*, this Court explained that the Sheriff knew or should have known that the action would have been brought against him. We noted that the Sheriff's Office's motion to dismiss stated that the Sheriff was the proper party. Similarly, Cabezuela should have known, or did know, that the suit should have been brought against him in his individual capacity. First, the original complaint alleges punitive damages, which are typically unavailable in official capacity suits. *See, e.g., Hill,* 924 F.2d at 1373. Second, paragraph sixteen of the original complaint makes a claim of deliberate indifference against Cabezuela in his individual capacity, while paragraph eighteen makes a claim of deliberate indifference against Plano. The allegations regarding deliberate indifference are distinct as to each of the Defendants. Against Cabezuela, Sanders–Burns alleged deliberate indifference for Sanders's medical need, while against Plano Sanders–Burns alleged deliberate indifference for the need to train against the dangers of positional asphyxia. Third, the original complaint's prayer for relief asks judgment to be entered against Cabezuela in his "individual capacity."

As is evidenced by the discussion above, Sanders–Burns's original complaint alleges suit against Cabezuela in his individual capacity, except for the error in paragraph eight of the complaint. *See, e.g., Hill,* 924 F.2d at 1374. We take a "sensible approach to reading a complaint so that suits may be maintained regardless of technical pleading errors" as is required by Rule 15(c). *Id.* at 1373–74. Again, the purpose of Rule 15(c) is to " 'help, not hinder, per-

sons who have a legal right to bring their problems before the courts.'" *Id.* at 1375 (citation omitted). After conducting a side-by-side comparison of the original and amended complaints, it is clear to us that the only modification between the original and amended complaint is the substitution of the word "individual" for "official."

Because Cabezuela received sufficient notice of the lawsuit, was not prejudiced in preparing a defense, and knew or should have known that but for the mistake of identity he would have been named in the original pleading, we REVERSE and RE-MAND on this issue.

### B. Plano's Motion for Summary Judgment

#### 1. Standard of Review

This Court reviews a district court's grant of summary judgment *de novo,* using the same standard as that applied by the district court. *Riverwood Int'l Corp. v. Employers Ins. of Wausau,* 420 F.3d 378, 382 (5th Cir.2005). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). This Court views "the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Riverwood,* 420 F.3d at 382 (citation omitted).

#### 2. Municipal Liability under Section 1983

▮▮▮ Cities are not liable for constitutional violations committed by city employees unless those violations result directly from a municipal custom or policy. *See, e.g., City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Conner v. Travis County,* 209 F.3d 794, 796 (5th Cir.2000). The liability

under the doctrine of *respondeat superior* is not cognizable in § 1983 actions. *Cozzo v. Tangipahoa Parish Council–President Gov't,* 279 F.3d 273, 286 (5th Cir.2002). It is, however, "clear that a municipality's policy of failure to train its police officers can rise to § 1983 liability." *Brown v. Bryan County,* 219 F.3d 450, 456 (5th Cir. 2000). For the purposes of § 1983, an official policy is a

> policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's law-making officers or by an official to whom the lawmakers have delegated policy-making authority. Alternatively, official policy is a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Finally, a final decisionmaker's adoption of a course of action tailored to a particular situation and not intended to control decisions in later situations' [*sic*] may, in some circumstances, give rise to municipal liability under § 1983.

*Id.* at 457 (internal citations and quotations omitted).

▮▮▮ For Sanders–Burns to succeed on her failure to train claim against Plano, she must demonstrate that: (1) Plano's training policy procedures were inadequate, (2) Plano was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused Sanders's death. *See Baker v. Putnal,* 75 F.3d 190, 200 (5th Cir.1996); *see also Pineda v. City of Houston,* 291 F.3d 325, 332 (5th Cir.2002).

▮▮▮ The Supreme Court has explained "that a municipality can be liable for failure to train its employees when the municipality's failure shows 'a deliberate indifference to the rights of its inhabitants.'"

*Farmer v. Brennan,* 511 U.S. 825, 840, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing *City of Canton,* 489 U.S. at 389, 109 S.Ct. 1197). "Deliberate indifference is more than mere negligence." *Conner,* 209 F.3d at 796 (citation omitted). Sanders–Burns must show that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonable be said to have been deliberately indifferent to the need." *City of Canton,* 489 U.S. at 390, 109 S.Ct. 1197.

 Finally, a showing of deliberate indifference is difficult, although not impossible, to base on a single incident. *Gabriel v. City of Plano,* 202 F.3d 741, 745 (5th Cir.2000); *Conner,* 209 F.3d at 797. Claims of inadequate training generally require that the plaintiff demonstrate a pattern. *Davis v. City of N. Richland Hills,* 406 F.3d 375, 383 n. 34 (5th Cir.2005) (citation omitted). "Notice of a pattern of similar violations is required." *Id.* at 383. The prior acts must be "fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act must have involved injury to a third party." *Id.* The "single incident exception" is narrow and to rely on the exception "a plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented

the moving force behind the constitutional violation." *Id.* at 386 (quoting *Brown,* 219 F.3d at 462) (internal quotation marks omitted).

### 3. Analysis

Sanders–Burns's claims against Plano fail. Sanders–Burns fails to produce evidence demonstrating that Plano's training policy procedures were inadequate. While Cabezuela and King both testified that they never received training regarding positional asphyxia, Cabezuela did receive training on how to deal with individuals at a high risk of custodial death due to being handcuffed in a prone position—the cause of Sanders's death by positional asphyxia. The record also demonstrates that Cabezuela was trained in proper procedures for handcuffing individuals, the importance of monitoring individuals in custody, and when it is necessary to obtain medical help for an individual.[5] Furthermore, we previously explained that when officers have received training required by Texas law, the plaintiff must show that the legal minimum of training was inadequate. *See Benavides v. County of Wilson,* 955 F.2d 968, 973 (5th Cir.1992). Here, Cabezuela completed the state-mandated training for police officers. Sanders–Burns does not allege that the state requirements are inadequate.

 Sanders–Burns also fails to establish that Plano acted with deliberate indifference.[6] Claims of inadequate training

---

**5.** There is conflicting testimony from King indicating that he never received training regarding the dangers of cuffing someone in the prone position with their hands behind their back. Yet, even assuming that Plano had an inadequate training policy, Sanders–Burns does not demonstrate that Plano acted with deliberate indifference.

**6.** We note that the facts in this case surrounding the dangers presented by positional asphyxia differ from those presented in our previous cases dealing with four-point restraint

(also referred to as "hog-tie" restraint). *See, e.g., Gutierrez v. City of San Antonio,* 139 F.3d 441, 451 (5th Cir.1998). In *Gutierrez,* we noted the dangers of hog-tie restraint, specifically when coupled with a lack of constant monitoring, but explained that "merely restraining a person in a prone position without constant monitoring cannot be characterized, in itself, as deadly force." *Id.* (quotation omitted). Plano has an explicit policy against the use of hog-tie restraint and a policy to monitor all individuals placed in the prone position.

generally require that the plaintiff demonstrate a pattern of conduct, and Sanders–Burns fails to allege such a pattern: Sanders–Burns fails to allege another death similar to the one suffered by her son occurring in Plano. *See Davis*, 406 F.3d at 383 n. 34. With regard to single-incident liability, Sanders–Burns has failed to provide evidence to support her claim that the need for more training was "obvious and obviously likely to result in a constitutional violation." *Cozzo*, 279 F.3d at 287 (quoting *City of Canton*, 489 U.S. at 390 n.10, 109 S.Ct. 1197) (internal quotations omitted). Thus, Sanders–Burns has failed to provide evidence under which a reasonable jury could conclude that Plano acted with deliberate indifference to the rights of its inhabitants with respect to training its police officers regarding the dangers of positional asphyxia.

█ Finally, based on the record presented, Sanders–Burns failed to demonstrate a causal connection between Plano's training policies and Sanders–Burns's death.

We AFFIRM the district court's grant of summary judgment.

*C. Constitutional Violation by Cabezuela*

█ Cabezuela contends that Plano demonstrated that Cabezuela's actions in connection with Sanders's death did not violate the constitution, therefore, this Court should affirm the district court's dismissal of all federal claims.[7] But as Sanders–Burns explains in reply, her claims against Plano are based on Plano's allegedly inadequate training policies and

procedures. The claims against Cabezuela are based on the alleged use of excessive force and deliberate indifference to Sanders's health and safety. The claims against Plano and Cabezuela are distinct and the district court may easily grant summary judgment in favor of Plano while finding issues of material fact present that allow the claims against Cabezuela to proceed to trial. Because the district court ruled that Sanders–Burns's amended complaint did not relate back to her original complaint, the claims against Cabezuela in his individual capacity were never properly before the district court and the record on this issue is not fully developed. Thus, while we may affirm "a district court's Rule 12(b)(6) dismissal on any grounds raised below and supported by the record," *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (2007) (citation omitted), we decline to do so in the instant case based on the district court's grant of summary judgment in favor of Plano.

## III. CONCLUSION

We REVERSE and REMAND the district court's grant of Cabezuela's motion to dismiss based on its determination that Sanders–Burns's amended complaint did not relate back to the original complaint and violated the statute of limitations. We AFFIRM the district court's grant of Plano's motion for summary judgment.

---

7. In support for her argument, Sanders–Burns cites only to *Champagne Metals v. Ken–Mac Metals, Inc.*, 458 F.3d 1073 (10th Cir. 2006), a dispute regarding a violation of § 1 of the Sherman Antitrust Act. *Champagne Metals* states: "The district court did not address the Established Distributors' statute of limitations defense in granting their motions for summary judgment. However, we have discretion to affirm on any ground adequately supported by the record, so long as the parties have had a fair opportunity to address that ground." *Id.* at 1088 (citations and quotations omitted). We do not find *Champagne Metals* to be analogous to the instant case or persuasive on how to resolve this issue.