REVISED January 14, 2010

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 11, 2010

Charles R. Fulbruge III
Clerk

No. 08-40459

_____

LINDA SANDERS-BURNS, Individually and as an heir of the Estate of
Anthony Demille Sanders, deceased

Plaintiff - Appellant

v.

CITY OF PLANO; JOSEPH CABEZUELA, Police Officer

Defendants - Appellees

_____

Appeal from the United States District Court
for the Eastern District of Texas

_____

Before KING, STEWART, and SOUTHWICK, Circuit Judges.

CARL E. STEWART, Circuit Judge:

The opinion previously filed in this case, and reported at 578 F.3d 279, is withdrawn and the following is substituted therefor.

On February 10, 2005, Officer Joseph Cabezuela ("Cabezuela") responded to an altercation involving Anthony Sanders ("Sanders") and his neighbor. Cabezuela handcuffed Sanders and left him on his stomach face down against the floor while he questioned others in the home regarding the altercation. Sanders died from positional asphyxia.

On October 17, 2006, Sanders's mother, Linda Sanders-Burns ("Sanders-Burns"), filed a complaint under 42 U.S.C. § 1983 against Cabezuela and the City of Plano, Texas (jointly "Defendants") alleging a violation of her son's constitutional rights, which resulted in his death. Despite making a number of individual capacity claims against Cabezuela, Sanders-Burns's original complaint stated that Cabezuela was sued in his official capacity, instead of his individual capacity. After learning of this mistake, Sanders-Burns moved to amend her complaint under Federal Rule of Civil Procedure ("Rule") 15(c) on July 16, 2007. The district court granted this motion on August 21, 2007, and the next day, Sanders-Burns filed an amended complaint, the only function of which was to replace the statement that Cabezuela was sued in his official capacity with a statement that Cabezuela was sued in his individual capacity. On October 31, 2007, Cabezuela asked the district court to dismiss Sanders-Burns's individual capacity claims against him because the statute of limitations expired before Sanders-Burns amended her complaint. On March 14, 2008, the district court granted Cabezuela's motion to dismiss, finding that the amended complaint did not relate back to her original complaint and was time barred by the statute of limitations.

Sanders-Burns's original complaint also alleged that the City of Plano ("Plano") failed to adequately train Cabezuela as to the deadly risks of cuffing an individual lying face down. On March 31, 2008, the district court granted Plano's motion for summary judgment and found, as a matter of law, that there was no question of fact as to whether Plano failed to adequately train its officers. Sanders-Burns appeals. We REVERSE in part and AFFIRM in part.

I. FACTUAL AND PROCEDURAL BACKGROUND

Cabezuela attended and received training at the North Central Texas Council of Governments' Regional Police Academy ("COG Academy") in Arlington, Texas from June 2002 to October 2002, when he graduated. COG

Academy's training program is certified by the Texas Commission on Law Enforcement Officer Standards and Education as a training program that must be completed by individuals before they can be licensed as a police officer in Texas. While at COG Academy, Cabezuela was trained in dealing with persons who are at a high risk of custodial death due to intoxication (alcohol or drug), violent or bizarre behavior, upper body obesity, or being handcuffed in a prone position (i.e., lying face down). The training program did not specifically use the term "positional asphyxia." The training included instruction on how to handcuff, monitor the well-being of, and search persons handcuffed in a prone position. At the time of the incident leading to the instant proceedings, Cabezuela had received more than 944 hours of training. As part of Cabezuela's training, he was instructed to promptly call 9-1-1 or summon EMS personnel after determining that a person, detainee, or arrestee is in need of immediate medical care.

On February 10, 2005, Cabezuela, working alone in a marked police car, received a radio run to proceed to 1816 Fairfield Drive in Plano concerning a disturbance involving a homeowner and a neighbor. Cabezuela arrived at 7:54 p.m., approached the front door of the home, and observed Carlos Mercado ("Mercado"), the homeowner, restraining Sanders. Sanders was face down on the floor just inside the home. Cabezuela entered the home and ordered Mercado to get off Sanders. Cabezuela then handcuffed Sanders and ordered him to remain on the floor, face down with his hands restrained behind his back. Neither party disputes that Sanders was alive when Cabezuela handcuffed him.

Cabezuela, standing near Sanders, then began questioning Mercado and other persons in the home regarding the incident. Cabezuela learned that Sanders entered the home yelling profanities, began removing his belt or pants, and then began fighting Mercado. Mercado explained that he subdued Sanders by placing him in a headlock on the floor with Mercado laying on top of him.

Mercado estimated that they were in that position for approximately ten minutes before Cabezuela arrived. While Cabezuela questioned Mercado, Sanders began to "aggressively kick his legs." Eventually, Sanders stopped moving and Cabezuela nudged Sanders with his foot and asked Sanders if he was okay. Sanders moved his head and mumbled something that Cabezuela did not understand, and Cabezuela continued speaking with Mercado.

Officer Jeff King ("King") arrived on the scene at 7:59 p.m. As King entered the house, Cabezuela realized Sanders might not be breathing. EMS was summoned by the officers at 8:00 p.m., and King went to his police car to obtain equipment to aid in the resuscitation and CPR of Sanders. When King returned, the Fire Department had arrived (at 8:04 p.m.), and Cabezuela was in the process of removing the handcuffs from Sanders. Firefighters found no signs of life. Sanders was taken to the Medical Center of Plano at 8:23 p.m, and he was pronounced dead at 8:45 p.m. The death was ruled a homicide, and the cause of death was "sudden death, chest compression and restraint," otherwise known as positional asphyxia.

At his deposition, Cabezuela testified that he never received training from the Plano Police Department concerning the dangers of the medical condition termed positional or compression asphyxia. Plano provided no documentary evidence demonstrating that they provided training to their officers concerning positional or compression asphyxia.

On October 17, 2006, Sanders-Burns filed suit under § 1983 claiming that Cabezuela and Plano violated her son's rights under the Fourth and Fourteenth Amendments. Sanders-Burns alleged that Sanders was subjected to the use of excessive force and that Plano and Cabezuela were deliberately indifferent to his medical needs. Sanders-Burns alleged that Plano was "responsible for implementing the policies, procedures, practices and customs, as well as for the acts and omissions alleged in this action." The complaint stated that Cabezuela

was sued "sued in his official capacity." However, the complaint made out individual capacity claims against Cabezuela, and, in the prayer for relief, the complaint stated that Sanders-Burns requested that judgment be entered against Cabezuela, in his individual capacity, for punitive damages. Further, in his answer to this complaint, Cabezuela asserted the defense of qualified immunity—a defense that is only relevant to individual capacity claims.

On July 3, 2007, Cabezuela filed a motion to dismiss the official capacity and state law claims made against him. In light of this motion to dismiss, Sanders-Burns sought leave to amend her complaint, on July 16, 2007, in order to clarify that suit was brought against Cabezuela in his individual capacity. Cabezuela and Plano opposed this motion, but the district court granted the motion on August 21, 2007, reserving the issue whether the individual capacity claims against Cabezuela were time-barred for a later date. On August 22, 2007, Sanders-Burns filed an amended complaint and jury demand that only changed the statement that Cabezuela was sued in his official capacity to state that Cabezuela was sued in his individual capacity. Also on August 22, the district court granted Cabezuela's motion to dismiss the official capacity and state law claims against him, in light of Sanders-Burns's amended complaint.

On July 31, 2007, while the parties were litigating whether to grant the motion for leave to file an amended complaint, the Defendants filed a motion for summary judgment. The Defendants argued that they did not deprive Sanders of any of his federally secured rights and that they had no custom, policy, or practice that caused Sanders to be deprived of any of his federally secured rights. The Defendants also stated that they were entitled to immunity from Sanders-Burns's state law claims.

On October 31, 2007, Cabezuela filed a motion to dismiss the individual capacity claims asserted against him, arguing that Sanders-Burns's amended complaint was time barred because the statute of limitations expired before the

amended complaint was filed and that the amended complaint did not relate back to the original complaint under Rule 15(c). Sanders-Burns responded, asserting that her amended complaint related back to her original complaint under Rule 15(c).

On March 14, 2008, the district court granted Cabezuela's motion to dismiss, finding that the amended complaint did not relate back and therefore was not filed within the statute of limitations period. The court explained that Sanders-Burns had been placed on notice of her failure to name Cabezuela in his individual capacity. On March 31, 2008, the district court granted Plano's motion for summary judgment because Sanders-Burns provided no evidence that Plano consciously or deliberately omitted positional asphyxia from its training program, and there was "no evidence in the record from which a reasonable juror could conclude that the City was deliberately indifferent to the rights of its inhabitants with respect to training its police officers on positional asphyxia." Sanders-Burns appeals.

## II. DISCUSSION

### A. Dismissal of Sanders-Burns's Amended Complaint

#### 1. Standard of Review

The district court granted Cabezuela's motion to dismiss the individual capacity claims against him because the district court held that the individual capacity claims were not filed within the statute of limitations period and that the amended complaint did not relate back to the original complaint for statute of limitations purposes. We review a Rule 12(b)(6) dismissal de novo, accepting all well-pleaded facts as true and reviewing them in the light most favorable to the plaintiff. Piotrowski v. City of Houston, 51 F.3d 512, 514 (5th Cir. 1995).

#### 2. Rule 15(c)

An amended complaint may "relate back" to an original complaint for statute of limitations purposes. Whether an amended complaint relates back to

an original complaint is governed by Rule 15(c), which states in relevant part:

> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
>
> . . . .
>
>   (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
>   (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party is brought in by amendment:
>
>     (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
>     (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.[1]

FED. R. CIV. P. 15(c). Thus, for Sanders-Burns to establish that the amended complaint relates back to the original complaint, she must demonstrate that the amended pleading satisfies the elements provided in Rule 15(c)(1)(B)-(C):

> (1) it must arise from the same transaction or occurrence as the original pleading . . . and (2) . . . the party named in the amended pleading must have both received sufficient notice of the pendency of the action so as not to be prejudiced in preparing a defense, and have known or should have known that but for a mistake of identity the party would have been named in the original pleading.

See STEVEN BAICKER-MCKEE, WILLIAM M. JANSSEN, & JOHN B. CORR, FEDERAL CIVIL RULES HANDBOOK 531-32 (2009).

Sanders-Burns's original complaint claimed relief based on Cabezuela's individual conduct,[2] sought punitive damages—which are available only in

---

[1] Rule 15 was amended on December 1, 2007. The amendment did not change the substance of the rule. The district court's order dated March 8, 2008, however, cites to the pre-2007 version of the Rule. Because the changes were merely stylistic, the differences do not affect the outcome in this case.

[2] See, e.g., Plaintiff's Original Complaint, Oct. 17, 2006, ¶ 16 (alleging a claim of deliberate indifference against Cabezuela).

individual capacity suits,[3] sought that judgment be entered against the defendants in their individual capacities,[4] and made allegations against the City of Plano that would render any official capacity claim against Cabezuela redundant. However, paragraph eight of the original complaint stated that Cabezuela was sued in his official capacity.[5] The question then is whether Sanders-Burns's amended complaint, which only replaced the statement that Cabezuela was sued in his official capacity with the statement that Cabezuela was sued in his individual capacity, relates back to Sanders-Burns's original complaint for statute of limitations purposes under Rule 15(c).[6] We hold that it does.

We previously addressed whether an amended complaint relates back to an original complaint in cases with similar, though distinguishable, facts as those present in the instant case. See Kerney v. Fort Griffin Fandangle Ass'n, 624 F.2d 717 (5th Cir. 1980); Kirk v. Cronvich, 629 F.2d 404 (5th Cir. 1980).[7] In

---

[3] Id. Prayer (e.) ("Judgment be entered against Defendants . . . for punitive damages in an amount sufficient to punish Defendants for their misconduct . . . .").

[4] Id. ("Judgment be entered against Defendants in their individual capacity . . . .").

[5] Id. ¶ 8 ("Defendant Police Officer Joseph Cabezuela is a police officer employed by the City of Plano Police Department . . . . He is sued in his official capacity.").

[6] Plaintiff's First Amended Complaint, Aug. 22, 2007, ¶ 8 ("Defendant Police Officer Joseph Cabezuela is a police officer employed by the City of Plano Police Department . . . . He is sued in his individual capacity.")

[7] After Kerney and Kirk, the Supreme Court decided Schiavone v. Fortune, AKA Time, Inc., 477 U.S. 21 (1986), and addressed the issue of when an amended complaint relates back to the original filing. The Supreme Court outlined a four-factor test that must be satisfied for a court to find that an amended complaint relates back to the original. Schiavone, 477 U.S. at 29-30. Cabezuela argues that Kirk was overruled by Schiavone and that this court should use Schiavone's four-factor test. But in Honeycutt v. Long, this Court explained that Kirk was overruled on limited grounds. 861 F.2d 1346, 1352 n.9 (5th Cir. 1988). Schiavone rejected only Kirk's holding that the period for notice includes a reasonable time to perfect service. Id.

Furthermore, the holding in Schiavone was superceded by the 1991 amendments to Rule 15(c). In Jacobsen v. Osborne, this court explained that in response to Schiavone, Rule

Kerney, the plaintiff was unable to learn the names of all of the defendants he wanted to bring suit against, so "he sued by name those defendants whose names he knew and added as fictitious defendants John Doe, Richard Roe . . . ." Kerney, 624 F.2d at 718. After the statute of limitations had run, the plaintiff filed an amended complaint. The plaintiff's "amended complaint differed from the original complaint in only two respects: it dropped the fictitious defendants, and it added class allegations, making the nine named defendants representatives of a class as well as individual defendants. The amended complaint named no parties whom the original complaint had not named." Id. at 721. We concluded that while the amendment did not fall strictly within the rubric of Rule 15(c), the policy rationale of the rule dictated that the amended complaint relate back to the original complaint. Id. We reached this conclusion, in part, because the amendment merely changed "the status" of the "individual defendants to class representatives without changing the ultimate liability sought to be imposed." Id.

In Kirk, the plaintiff initially named the Sheriff's Office as the defendant. 629 F.2d at 405. After the one-year statute of limitations expired, the district court dismissed the Sheriff's Office. Id. The plaintiff then amended the complaint to name the Sheriff individually. Id. The Sheriff moved to dismiss

---

15(c) was amended to change the fourth relation-back factor. 133 F.3d 315, 319 (5th Cir. 1998). In explaining the change to Rule 15(c), the Advisory Committee stated that

> '[i]f the notice requirement is met within the Rule 4(m) period, a complaint may be amended at any time to correct a formal defect such as a misnomer or misidentification. On the basis of the test of the former rule, the [Supreme] Court reached a result in Schiavone v. Fortune that was inconsistent with the liberal pleading practices secured by Rule 8.'

Id. (quotation omitted) (emphasis in the original). The Jacobsen court went on to utilize the reasoning in Kirk in deciding whether "a proposed amendment to a complaint to add new parties relate[d] back to the date of the original complaint, especially for replacing 'John Doe' defendants, thereby defeating a limitations bar as to those putative parties." Id. at 317, 320.

the amended complaint as barred by the statute of limitations, and the district court granted the motion. Id. In conducting the Rule 15(c) analysis, we first noted that the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading because the amended pleading simply substituted the name of the Sheriff for the Sheriff's Office in the original complaint. Id. We next determined that the Sheriff had sufficient notice, even though there was no evidence that he had actual knowledge of the action until he was personally served, because when the original complaint "is perfected upon an agent of a party sought to be brought in by amendment, there is adequate notice of the action to that party." Id. Notice to the Sheriff was also sufficient by virtue of the "identity of interest"[8] between the Sheriff and the Sheriff's Office. Id. at 408. The Sheriff could not claim prejudice due to loss of evidence or undue surprise because upon learning of the action against the Sheriff's Office, the Sheriff and his attorneys would already have begun investigating the claim and preserving evidence. Id. Lastly, the Sheriff "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." Id. at 407-08.

Similarly, our sister circuits have considered, in somewhat analogous circumstances, whether an amended complaint related back to the original complaint for statute of limitations purposes. See Hill v. Shelander, 924 F.2d 1370 (7th Cir. 1991); cf. Atchinson v. District of Columbia, 73 F.3d 418, 424 (D.C. Cir. 1996); Lovelace v. O'Hara, 985 F.2d 847 (6th Cir. 1993); see also Colvin v. McDougall, 62 F.3d 1316 (11th Cir. 1995).

---

[8] "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." Id. at 408 n.4 (quoting 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1499 (1972)).

In Hill v. Shelander, the Seventh Circuit considered whether the district court had appropriately granted summary judgment to the defendant police officer on statute of limitations grounds. Hill's first complaint, filed pro se, failed to name Shalander in his individual capacity (or any capacity), and the first and second amended complaints, filed by Hill's first court-appointed counsel, named Shelander only in his official capacity. 924 F.2d at 1375. Hill's second lawyer "recognized the technical error in [Hill]'s second amended complaint and tried to amend it to reflect the proper capacity in which Shelander was to be sued." Id. The district court granted Hill's motion for leave to amend his complaint to assert an individual capacity suit at trial, but then granted summary judgment to the police officer, holding that the individual capacity claim was time-barred. The Seventh Circuit's analysis put great emphasis on the allegations found in the actual complaint and explained that the court should take a "sensible approach to reading a complaint so that suits may be maintained regardless of technical pleading errors." Id. at 1373–74. The Seventh Circuit reversed the grant of summary judgment on statute of limitation grounds, concluding that "Hill's complaint when 'read in its entirety' plainly show[ed] that an individual capacity suit was intended." Id. at 1374.

The Seventh Circuit explained that Rule 15(c)[9] serves as a useful guide to "help, not hinder, persons who have a legal right to bring their problems before the courts." Id. at 1375 (quotation omitted). The Seventh Circuit then applied the analysis used by this Court in Kirk and Kerney and concluded that (1) Hill's claims arose out of the original occurrence and merely changed the capacity, not the identity, of the defendant; (2) Shelander knew from the start the nature of the allegations against him and would not be prejudiced defending the merits; and (3) it should have been clear to Shelander that the suit was brought against

---

[9] The Seventh Circuit decided Hill before the 1991 amendments to Rule 15(c), but the amendments do not materially affect the holding in Hill.

him in his individual capacity for the injuries he inflicted on Hill because Hill sought punitive damages. Id. at 1377-78.

In Lovelace v. O'Hara, the Sixth Circuit addressed whether the district court erred in allowing Lovelace to amend her complaint, after the statute of limitations had run, to name O'Hara in his individual capacity. Lovelace, 985 F.2d at 848-49. The court concluded that there was no question as to whether the original and amended complaints involved the same conduct, but found that O'Hara did not receive notice that he was being sued in his individual capacity until several months after the "120 days allowed for service of the summons and complaint." Id. at 850. The Sixth Circuit explained that "[i]t is not too much to ask that if a person or entity is to be subject to suit, the person or entity should be properly named and clearly notified of the potential for payment of damages individually." Id. The court found the distinction between an official capacity suit and individual capacity suit to be significant. Because O'Hara may have developed a different legal strategy if he had been aware that he was being sued personally, the court concluded that he was prejudiced by not having sufficient notice under Rule 15(c). Id. Furthermore, the court found that O'Hara did not know and should not have known that, but for a mistake in identity, the suit would have been brought against him. Id. The court, as in Hill, examined the original complaint and found that it "contained a statement that O'Hara acted 'not as an individual,' but 'clearly within the expressed and implied powers of his official capacity.'" Id. Thus, the court concluded that O'Hara had no reason to believe that he would be held personally liable.[10]

---

[10] In cases after Lovelace, the Sixth Circuit has held that an amended complaint that clarifies that a suit is brought against an officer in his individual capacity relates back to the original complaint under Rule 15. In Brown v. Shaner, 172 F.3d 927, 928–929 (6th Cir. 1999), the plaintiffs filed suit against two police officers in state court without stating the capacity in which the officers were sued. After removal to federal court, the district court extended an invitation to the plaintiffs to amend their complaint, and the plaintiffs declined. After voir dire, upon an oral motion to dismiss by the police officers, the district court again extended an

In Colvin v. McDougall, after a trial and verdict, the district court upheld the punitive damages awarded by the jury against Sheriff McDougall because it determined that the damages had been assessed against McDougall in his personal capacity. 62 F.3d at 1317. The Eleventh Circuit reversed, holding that nothing in the suit suggested that it was an individual capacity suit, and instead, the suit was framed like an official capacity suit. Colvin had not indicated in his complaint whether he was suing McDougall in his official or individual capacity. Id. at 1317. The Eleventh Circuit explained that the court must examine the complaint and the course of proceedings to determine whether Colvin sued McDougall in his official or individual capacity. Id. (citing Kentucky v. Graham, 473 U.S. 159, 167-68 n.14 (1985)). The court then assessed the pleading and determined that it looked like an official capacity suit. Id. Most importantly, Colvin's attorney stated on the record that the suit against

---

invitation for the plaintiffs to amend their complaint, and the plaintiffs filed an amended complaint "finally naming" the officers in their individual capacities. Id. at 929. The district court subsequently granted the officers' motion to dismiss because it held that the individual capacity suit was barred by the statute of limitations. On appeal, the Sixth Circuit concluded that the amended complaint related back to the original complaint for statute of limitations purposes and reversed the district court's dismissal. In differentiating Lovelace, the Sixth Circuit noted that the plaintiff's original complaint "did not speak in unequivocal terms . . . . All of the defendants' wrongdoing related to their personal conduct." Id. at 933. The Sixth Circuit then concluded that plaintiffs' "failure to add the word 'individual' to his original complaint was a simple 'mistake' . . ." such that relation back was appropriate. Id. at 934.

In Moore v. City of Harriman, 272 F.3d 769, 771 (6th Cir. 2001) (en banc), the plaintiff filed suit against several police officers and the City of Harriman, asserting both constitutional and state law claims. However, the plaintiff failed to state in what capacity the officers were sued. Following the officers' motion to dismiss, the district court held that the plaintiff's complaint failed to state a claim against the officers in their individual capacities and thus granted the officers' motion to dismiss. Id. The plaintiff then moved for leave to file an amended complaint, but the district court denied the opportunity to amend, stating that such an amendment would be futile because the statute of limitations had run. Id. The Sixth Circuit reversed finding that the district court erred in refusing to allow the plaintiff to amend his complaint because the amended complaint related back under Rule 15. Id. at 774. Relying on Shaner, the Sixth Circuit determined that because the plaintiff had alleged constitutional and state law claims based on the officers' own conduct that the "officers received clear notice from the beginning that they faced individual liability of some sort for the conduct of which [the plaintiff] complains." Id. at 774–75.

McDougall was in his official capacity. Id. at 1318. The court also noted that McDougall did not raise the defenses of good faith or qualified immunity in his answer and did not indicate an awareness that he was being sued in his individual capacity. Id. at 1317-18. Finally, in Atchinson v. District of Columbia, the D.C. Circuit considered whether the district court abused its discretion when it refused to allow Atchinson to amend his complaint to change a suit against an officer from an official capacity to an individual capacity suit a year and a half after the district court had dismissed § 1983 claims against the District of Columbia, because the complaint failed to meet the D.C. Circuit's pleading standards at the time. 73 F.3d at 424. The defendants then argued that the official capacity claims against Officer Collins should also be dismissed because they were redundant. Id. In response, Atchinson sought to amend his complaint to assert individual capacity claims against Collins. Id. at 420. The court began by looking at the text of the original complaint, which stated that "defendants who are individuals are sued solely in their official capacity." Id. In a hearing, Atchinson's attorney reaffirmed that defendant Collins was being sued solely in his official capacity, and only altered course after he realized the case might be dismissed if the claims were only against the defendant-officer in his official capacity. Id. The court noted, however, that Atchinson sued for punitive damages and joint and several liability, indicating that the suit was against the defendant-officer in his individual capacity. Id. at 425. The court explained that if the complaint had been "silent as to the capacity in which" the defendant-officer was sued, the claims for punitive damages and joint and several liability would be relevant, but the complaint specifically stated that Atchinson was suing the defendant-officer in his official capacity. Id. Thus, the court rejected Atchinson's assertion that the parties understood the suit to be against the defendant-officer in his individual capacity. The court discussed Lovelace and Hill, noting that the defendant-officer argued that if he had known he would be

14

personally liable for damages he would have retained private counsel and conducted discovery differently. Id. at 427. The court found the district court's concerns regarding the defendant-officer's choice of counsel and litigation strategy to be well-founded. Id. Ultimately, the D.C. Circuit held that, for the facts present in Atchinson, the district court did not abuse its discretion in denying leave to amend. Id.

### 3. Analysis

After examining the cases decided by the Sixth, Seventh, Eleventh, and D.C. Circuits, we are convinced that the different outcomes result from the specific circumstances presented in each case, as one would expect where the core concern is adequacy of notice. Each opinion provides a detailed analysis of the allegations made in the original complaint, as well as any relevant comments made by the plaintiff's attorneys during the course of the proceedings. This comports with the purpose of Rule 15(c). See generally, 3 EDWARD SHERMAN & MARY P. SQUIERS, MOORE'S FEDERAL PRACTICE - CIVIL § 15.19 (2009). Therefore, we turn to the specific allegations made in Sanders-Burns's complaint, while keeping in mind the above-mentioned caselaw.

In evaluating whether Sanders-Burns's amended complaint relates back to her original complaint, we note that the parties do not dispute that the amended complaint arises out of the same occurrence set forth in the original complaint. FED. R. CIV. P. 15(c)(1)(B). The parties only dispute whether (1) Cabezuela had appropriate notice of the action such that it did not prejudice him in preparing his defense and (2) Cabezuela knew, or should have known, that the action would have been brought against him in his individual capacity[11] but for

---

[11] Here Officer Cabezuela was not "brought in" to the litigation in the sense that he was added to the lawsuit where he had not been named in the original complaint. Instead, the amended complaint clarified that Officer Cabezuela was being sued in his individual capacity rather than in his official capacity. Nevertheless, it is undisputed that Rule 15 covers such a change in suit (if change it is) by referencing "changes . . . [in the] naming of the party . . ."

the mistake in the original complaint. FED. R. CIV. P. 15(c)(1)(C). A comparison with the facts in Kirk is instructive in determining whether Sanders-Burns meets the requirements set out in Rule 15(c)(1)(C).

In Kirk, we determined that the Sheriff had sufficient notice, even though there was no evidence that the Sheriff had actual knowledge of the action until he was personally served. Here, Cabezuela had actual knowledge of the action at all times because he was named as a defendant in the original complaint and was personally served within a week of the filing of the original complaint. "[N]otice is sufficient if the newly named party was made aware of the issues in the complaint." See SHERMAN & SQUIERS, supra, at § 15.19[3][c].

Further, the facts here indicate that Cabezuela is not prejudiced in defending against the individual capacity claims. First, the answer to the complaint filed by the Defendants asserts the affirmative defense of qualified immunity—a defense against an individual capacity lawsuit. The inclusion of the affirmative defense of qualified immunity is important because it suggests that the attorney representing Plano and Cabezuela, in his official capacity, is likely to have communicated to Cabezuela that he may have been sued in his individual capacity. See SHERMAN & SQUIERS, supra, at § 15.19[3][c] ("In some cases notice may be imputed based on shared legal counsel, on the theory that when an originally named party and a new party are represented by the same attorney, the attorney is likely to have communicated to the new party that he or she may be joined in the action." (citations omitted)); cf. Colvin, 62 F.3d at 1317. Additionally, as discussed above, Sanders-Burns's original complaint reads like an individual capacity suit. This further suggests that Cabezuela had knowledge of the individual capacity claims against him such that he will not be prejudiced in defending against an individual capacity suit.

Second, while we do not discount the Sixth Circuit's concerns regarding the need for plaintiffs to properly name the person or entity they are suing,

Cabezuela is not now precluded from asserting the defense (asserted in his original answer) of qualified immunity on remand or from pursuing an individualized litigation strategy in defense of Sanders-Burns's claims against him in his individual capacity. We recognize that the risks to Cabezuela in an individual capacity suit, as opposed to an official capacity suit, are markedly different and may require a different defense strategy. He may have chosen to retain private counsel and to pursue a different litigation strategy. On remand, however, Cabezuela may still effectively pursue these avenues (and he makes no argument that he cannot) and, therefore Cabezuela is not prejudiced.

Having determined that Cabezuela had sufficient notice of the action, we must now turn to whether Cabezuela knew, or should have known, that Sanders-Burns's made a "mistake" rather than a strategic decision when she named Cabezuela in his official capacity. In considering this question, we note that Rule 15(c)(1)(C) permits an amended complaint to relate back to the original complaint because:

> a legitimate legal claim should not be squelched by a party mistakenly identifying the party to be sued. . . . The classic example of mistake is misnomer; that is, when a plaintiff misnames or misidentifies a party in its pleadings but correctly serves that party. In these cases, relation back is appropriate because the defendant is already before the court. . . . In some cases a legal mistake can lead to misnomer, as when a plaintiff names an institutional defendant because of confusion as to whether an individual or an institutional defendant is the proper party, but the individual is properly served and, therefore, has notice of the mistake. In contrast, a conscious choice to sue one party and not another does not constitute a mistake and is not a basis for relation back.

SHERMAN & SQUIERS, supra, at § 15.19[3][d] (citations omitted). A review of the complaint in this case indicates that the error of naming Cabezuela in his official capacity was an actual mistake, and that Sanders-Burns is not now merely

attempting a strategic change by amending her complaint, unlike the plaintiffs in Colvin and Atchinson.

In Kirk, this Court explained that the Sheriff knew or should have known that the action would have been brought against him. We noted that the Sheriff's Office's motion to dismiss stated that the Sheriff was the proper party. Similarly, Cabezuela should have known, or did know, that the suit should have been brought against him in his individual capacity. First, the original complaint alleges punitive damages, which are typically unavailable in official capacity suits. See, e.g., Hill, 924 F.2d at 1373. Second, paragraph sixteen of the original complaint makes a claim of deliberate indifference based on Cabezuela's individual actions, while paragraph eighteen makes a claim of deliberate indifference against Plano. The allegations regarding deliberate indifference are factually distinct as to each of the Defendants. Against Cabezuela, Sanders-Burns alleged deliberate indifference for Sanders's medical need, while against Plano Sanders-Burns alleged deliberate indifference for the need to train against the dangers of positional asphyxia. Third, the original complaint's prayer for relief asks judgment to be entered against Cabezuela in his "individual capacity." Fourth, the answer to the complaint filed by the Defendants asserts the affirmative defense of qualified immunity—a defense against an individual capacity lawsuit. The inclusion of the affirmative defense of qualified immunity further demonstrates that Cabezuela understood that Sanders-Burns intended to sue him in his individual capacity.[12]

We take a "sensible approach to reading a complaint so that suits may be maintained regardless of technical pleading errors" as is required by Rule 15(c).

---

[12] Defendant's Original Answer, Nov. 14, 2006, Affirmative Defenses ¶ 3 ("Defendant Officer Cabezuela will show that the Plaintiff has not stated a claim against him for which it can obtain recovery. Further, the claims asserted against him are redundant. In the alternative, he will show that he is entitled to qualified immunity from the Plaintiff's and Ms. Sanders' federal claims.").

Hill, 924 F.2d at 1373-74. Again, the purpose of Rule 15(c) is to "'help, not hinder, persons who have a legal right to bring their problems before the courts.'" Id. at 1375 (citation omitted). After conducting a side-by-side comparison of the original and amended complaints, we note that the only modification between the original and amended complaint is the substitution of the word "individual" for "official." As such, we determine that, except for the mistake in paragraph eight, Sanders-Burns's original complaint alleges suit against Cabezuela in his individual capacity.

Accordingly, we conclude that Sanders-Burns's amended complaint relates back to her original complaint for statute of limitations purposes under Rule 15(c). Sanders-Burns's amended complaint asserted a claim that arose out of the conduct, transaction, or occurrence set out in her original complaint, and Cabezuela both had sufficient notice of the lawsuit such that he is not prejudiced in defending on the merits and knew or should have known that he was sued in his individual capacity but for the mistake in the original complaint. Thus, we REVERSE the district court's dismissal of Sanders-Burns's individual capacity claims against Cabezuela and we REMAND for further proceedings.

B. Plano's Motion for Summary Judgment

1. Standard of Review

This Court reviews a district court's grant of summary judgment de novo, using the same standard as that applied by the district court. Riverwood Int'l Corp. v. Employers Ins. of Wausau, 420 F.3d 378, 382 (5th Cir. 2005). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). This Court views "the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." Riverwood, 420 F.3d at 382 (citation omitted).

2. Municipal Liability under Section 1983

Cities are not liable for constitutional violations committed by city employees unless those violations result directly from a municipal custom or policy. See, e.g., City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989); Conner v. Travis County, 209 F.3d 794, 796 (5th Cir. 2000). Liability under the doctrine of respondeat superior is not cognizable in § 1983 actions. Cozzo v. Tangipahoa Parish Council-President Gov't, 279 F.3d 273, 286 (5th Cir. 2002). It is, however, "clear that a municipality's policy of failure to train its police officers can rise to § 1983 liability." Brown v. Bryan County, 219 F.3d 450, 456 (5th Cir. 2000). For the purposes of § 1983, an official policy is a

> policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. Alternatively, official policy is a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Finally, a final decisionmaker's adoption of a course of action tailored to a particular situation and not intended to control decisions in later situations' [sic] may, in some circumstances, give rise to municipal liability under § 1983.

Id. at 457 (internal citations and quotations omitted).

For Sanders-Burns to succeed on her failure to train claim against Plano, she must demonstrate that: (1) Plano's training policy procedures were inadequate, (2) Plano was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused Sanders's death. See Baker v. Putnal, 75 F.3d 190, 200 (5th Cir. 1990); see also Pineda v. City of Houston, 291 F.3d 325, 332 (5th Cir. 2002).

The Supreme Court has explained "that a municipality can be liable for failure to train its employees when the municipality's failure shows 'a deliberate indifference to the rights of its inhabitants.'" Farmer v. Brennan, 511 U.S. 825,

840 (1994) (citing City of Canton, 489 U.S. at 389). "Deliberate indifference is more than mere negligence." Conner, 209 F.3d at 796 (citation omitted). Sanders-Burns must show that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonable be said to have been deliberately indifferent to the need." City of Canton, 489 U.S. at 390.

Finally, a showing of deliberate indifference is difficult, although not impossible, to base on a single incident. Gabriel v. City of Plano, 202 F.3d 741, 745 (5th Cir. 2000); Conner, 209 F.3d at 797. Claims of inadequate training generally require that the plaintiff demonstrate a pattern. Davis v. City of N. Richland Hills, 406 F.3d 375, 383 n.34 (5th Cir. 2005) (citation omitted). "Notice of a pattern of similar violations is required." Id. at 383. The prior acts must be "fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act must have involved injury to a third party." Id. The "single incident exception" is narrow and to rely on the exception "a plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." Id. at 386 (quoting Brown, 219 F.3d at 462) (internal quotation marks omitted).

### 3. Analysis

Sanders-Burns's claims against Plano fail. Sanders-Burns produces no evidence demonstrating that Plano's training policy procedures were inadequate. While Cabezuela and King both testified that they never received training regarding positional asphyxia, Cabezuela did receive training on how to deal with individuals at a high risk of custodial death due to being handcuffed in a prone position—the cause of Sanders's death by positional asphyxia. The record also demonstrates that Cabezuela was trained in proper procedures for

handcuffing individuals, the importance of monitoring individuals in custody, and when it is necessary to obtain medical help for an individual.[13] Furthermore, we previously explained that when officers have received training required by Texas law, the plaintiff must show that the legal minimum of training was inadequate. See Benavides v. County of Wilson, 955 F.2d 968, 973 (5th Cir. 1992). Here, Cabezuela completed the state-mandated training for police officers. Sanders-Burns does not allege that the state requirements are inadequate.

Sanders-Burns also fails to establish that Plano acted with deliberate indifference.[14] Claims of inadequate training generally require that the plaintiff demonstrate a pattern of conduct, and Sanders-Burns fails to allege such a pattern: Sanders-Burns fails to allege another death similar to the one suffered by her son occurring in Plano. See Davis, 403 F.3d at 383 n.34. With regard to single-incident liability, Sanders-Burns has failed to provide evidence to support her claim that the need for more training was "obvious and obviously likely to result in a constitutional violation." Cozzo, 279 F.3d at 287 (quoting City of Canton, 489 U.S. at n.10) (internal quotations omitted). Thus, Sanders-Burns has failed to provide evidence under which a reasonable jury could conclude that Plano acted with deliberate indifference to the rights of its inhabitants with

---

[13] There is conflicting testimony from King indicating that he never received training regarding the dangers of cuffing someone in the prone position with their hands behind their back. Yet, even assuming that Plano had an inadequate training policy, Sanders-Burns does not demonstrate that Plano acted with deliberate indifference.

[14] We note that the facts in this case surrounding the dangers presented by positional asphyxia differ from those presented in our previous cases dealing with four-point restraint (also referred to as "hog-tie" restraint). See, e.g., Gutierrez v. City of San Antonio, 139 F.3d 441, 451 (5th Cir. 1998). In Gutierrez, we noted the dangers of hog-tie restraint, specifically when coupled with a lack of constant monitoring, but explained that "merely restraining a person in a prone position without constant monitoring cannot be characterized, in itself, as deadly force." Id. (quotation omitted). Plano has an explicit policy against the use of hog-tie restraint and a policy to monitor all individuals placed in the prone position.

respect to training its police officers regarding the dangers of positional asphyxia.

Finally, based on the record presented, Sanders-Burns failed to demonstrate a causal connection between Plano's training policies and Sanders's death.

We AFFIRM the district court's grant of summary judgment.

## C. Constitutional Violation by Cabezuela

Cabezuela contends that Plano demonstrated that Cabezuela's actions in connection with Sanders's death did not violate the constitution, therefore, this Court should affirm the district court's dismissal of all federal claims.[15] But as Sanders-Burns explains in reply, her claims against Plano are based on Plano's allegedly inadequate training policies and procedures. The claims against Cabezuela are based on the alleged use of excessive force and deliberate indifference to Sanders's health and safety. The claims against Plano and Cabezuela are distinct and the district court may easily grant summary judgment in favor of Plano while finding issues of material fact present that allow the claims against Cabezuela to proceed. Because the district court ruled that Sanders-Burns's amended complaint did not relate back to her original complaint, the claims against Cabezuela in his individual capacity were never properly before the district court and the record on this issue is not fully developed. Thus, while we may affirm "a district court's Rule 12(b)(6) dismissal on any grounds raised below and supported by the record," Cuvillier v. Sullivan,

---

[15] In support for her argument, Sanders-Burns cites only to Champagne Metals v. Ken-Mac Metals, Inc., 458 F.3d 1073 (10th Cir. 2006), a dispute regarding a violation of § 1 of the Sherman Antitrust Act. Champagne Metals states: "The district court did not address the Established Distributors' statute of limitations defense in granting their motions for summary judgment. However, we have discretion to affirm on any ground adequately supported by the record, so long as the parties have had a fair opportunity to address that ground." Id. at 1088 (citations and quotations omitted). We do not find Champagne Metals to be analogous to the instant case or persuasive on how to resolve this issue.

503 F.3d 397, 401 (2007) (citation omitted), we decline to do so in the instant case based on the district court's grant of summary judgment in favor of Plano.

## III. CONCLUSION

We REVERSE and REMAND the district court's grant of Cabezuela's motion to dismiss based on its determination that Sanders-Burns's amended complaint did not relate back to the original complaint and violated the statute of limitations. We AFFIRM the district court's grant of Plano's motion for summary judgment.