**In re PILGRIM'S PRIDE
CORPORATION (Larry
and Eva Harden).**

**Civil Action No. 4:10–CV–292–Y.**

United States District Court,
N.D. Texas,
Fort Worth Division.

June 1, 2011.

Clayton E. Bailey, Baker & McKenzie LLP, Dallas, TX, for Pilgrim's Pride Corporation.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

TERRY R. MEANS, District Judge.

Before the Court is the Motion for Summary Judgment (bankr. doc. 6054) filed by Pilgrim's Pride Corporation and its affiliated reorganized debtors (collectively, "PPC"). After review, the Court will grant the motion.

## I. Background

PPC is a publicly-traded company that produces chicken in the continental United States, Puerto Rico, and Mexico. Larry and Eva Harden are local chicken growers who contracted with PPC in December

2007 to raise and care for a number of PPC's broiler chickens. On December 1, 2008, PPC filed a chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth division ("the bankruptcy court"). On June 16, 2010, the bankruptcy court entered an agreed order authorizing PPC to reject its broiler-grower agreements with the Hardens (bankr. doc. 5342) pursuant to 11 U.S.C. § 365(a) and Federal Rule of Bankruptcy Procedure 6006. By that order, PPC received authorization to terminate its grower contracts with the Hardens, who, in turn, were allowed to file any claims they had for damages resulting from PPC's termination of their contracts.

Accordingly, following PPC's rejection of their contracts, the Hardens filed proofs of claim in the bankruptcy court, alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, and section 192(a) of the Packers and Stockyards Act of 1921 ("PSA"), 7 U.S.C. § 192(a). PPC filed its objections (bankr. doc. 5798) to the Hardens' proofs of claim on August 24, 2010.[1]

After conducting discovery, PPC moved for summary judgment on the Hardens' claims in the bankruptcy court on December 3, 2010. That motion was briefed before the bankruptcy court and became ripe for review in that court. Because the Hardens had invoked the ADEA, however, this Court withdrew the reference of PPC's bankruptcy case insofar as it involved the Hardens' claims (doc. 228) pursuant to 28

---

1. When PPC objected to the Hardens' proofs of claim, it created a "contested matter" under Bankruptcy Rule 9014. *See In re Canoco, Inc.*, 323 Fed.Appx. 306, 308 (5th Cir.2009) (citing Fed. R. Bankr.P. 3007 advisory committee's notes). Rule 9014 incorporates Rule 7056, which in turn provides for summary judgement. *See* Fed. R. Bankr.P. 7056, 9014(c). Thus, "[b]ankrptcy courts [and district courts that have withdrawn the reference] can render summary judgment in contested matters." *See Canoco*, 323 Fed.Appx. at 308 (citing Fed. R. Bankr.P. 9014(c)).

U.S.C. § 157(b)(5).[2] Consequently, PPC's motion for summary judgment is now before the Court.[3]

## II. Legal Standard

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed.R.Civ.P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir.2001) (citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

To demonstrate that a particular fact is, or cannot be, genuinely in dispute, a party must either (1) cite particular parts of materials on the record (e.g., affidavits), (2) show that the materials cited by the adverse party do not establish the presence or absence of a genuine dispute, or (3) show that the adverse party cannot

produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1). Although the Court "need consider only the cited materials, . . . it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3). In evaluating whether summary judgment is appropriate, the Court "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Sanders–Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir.2010) (citation omitted) (internal quotation marks omitted). "[I]f no reasonable juror could find for the non-movant," summary judgment should be granted. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir.2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## III. Analysis

### A. The Hardens' ADEA Claims

#### 1. Existence of an Employment Relationship

 PPC initially contends that the Hardens' ADEA claims fail as a matter of

---

**2.** Under § 157(b)(5), this Court must "order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose." 28 U.S.C.A. § 157(b)(5) (West 2011). Unfortunately, however, § 157 does not define the term "personal injury tort." *See In re Arnold*, 407 B.R. 849, 851 (Bankr. M.D.N.C.2009). "As a result, courts have disagreed as to what constitutes a 'personal injury tort claim,' adopting one of three diverging views." *Id.* The narrowest definition of the term requires the presence of an actual physical injury. *See id.* (citing *Massey Energy Co. v. W. Va. Consumers for Justice*, 351 B.R. 348, 351 (E.D.Va.2006)). The most expansive definition "embraces a broad category of private or civil wrongs or injuries for which a court provides a remedy in the form of an action for damages, and includes damage to an individual's person and any invasion of personal rights, such as libel, slander and mental suf-

fering." *Id.* (quoting *Boyer v. Balanoff (In re Boyer)*, 93 B.R. 313, 317 (Bankr.N.D.N.Y. 1988)) (internal quotation marks omitted). The middle ground involves "looking to whether a claim falls within the purview of a personal injury tort claim under the expansive view, yet retaining bankruptcy jurisdiction over the claim if it has 'earmarks of a financial, business or property tort claim, or a contract claim.' " *Id.* (quoting *In re Ice Cream Liquidation*, 281 B.R. 154, 161 (Bankr. D.Conn.2002)). In its Order Withdrawing Reference (doc. 228), this Court aligned itself with the courts that have taken the expansive view, determining that the Hardens' ADEA claims constitute "personal injury tort" claims for purposes of § 157(b)(5).

**3.** By the Court's order of May 20, 2011 (doc. 284), this case was stayed as to the Hardens' claims pending resolution of PPC's summary-judgment motion.

law because the Hardens were not employees of PPC, but rather were independent contractors. "In determining whether an employment relationship exists within the meaning of Title VII and the ADEA, [courts within the Fifth Circuit] apply a 'hybrid economic realities/common law control test.'" *Deal v. State Farm County Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118–19 (5th Cir.1993). The most important component of this test is the right to control the alleged employee's conduct. *Id.* at 119. Relevant inquiries associated with the control component include "whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule." *Deal*, 5 F.3d at 119 (citations omitted). The economic-realities component of the test asks "whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id.* (citations omitted). Other factors to consider include the following:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Fields v. Hallsville Indep. Sch. Dist.*, 906 F.2d 1017, 1020 n. 4 (5th Cir.1990).

■ In light of these factors, the Court concludes that no employment relationship existed between PPC and the Hardens. The uncontroverted facts on the record establish that the Hardens maintained control over their day-to-day operations and possessed ultimate responsibility for the success or failure of their chicken farm. (PPC's App. 26–32.) For example, in their discretion, the Hardens could decide whether to "cull" any chickens they felt would not become productive broilers. (PPC's App. 30–31) Moreover, the Hardens operated the farm on their own land using their own chicken houses and their own equipment, which they were responsible for monitoring and maintaining. (PPC's App. 26–27, 29–32.) PPC did not withhold taxes on the Hardens' behalf, nor did PPC provide them with health insurance, employment benefits, or any other form of benefits typically provided to an employee by a large employer. (PPC's App. 25–26.) And in the Court's view, that PPC apparently had the right to inspect the Hardens' farm and observe their performance is not necessarily inconsistent with an independent, contract-based relationship. Indeed, in his deposition, Mr. Harden acknowledged that he could terminate his contract with PPC if he had wanted to do so, as his contract with PPC continued on a flock-to-flock basis. (PPC's App. 32–33.)

The record further establishes that the Hardens held themselves out as independent contractors. For example, their contracts with PPC state that the each of the Hardens "is an independent contractor and is not to be considered in any way an employee of [PPC]." (PPC's App. 59, 195.) In addition, the Hardens did not report

any wages, salaries, or tips on their 2004–2009 income-tax returns, but did pay self-employment taxes. (PPC's App. 91–92, 110–11, 118–19, 126–27, 136–37, 149–50.) Even in their response brief, the Hardens refer to PPC as their "customer." (Hardens' Resp. Br. 11.)

The only summary-judgment evidence offered by the Hardens are their one-paragraph affidavits, attesting that "the facts contained in [their response brief] are true and correct to the best of [their] knowledge." (E. Harden Aff. 1; L. Harden Aff. 1.) While affidavits can certainly serve as competent summary-judgment evidence, the non-conclusory facts supported by the Hardens' affidavits are not sufficient to place PPC's allegation of an independent-contractor relationship in dispute. Therefore, the Court concludes that no employment relationship existed between the PPC and the Hardens and that, as a result, the Hardens' ADEA claims fail as a matter of law.

### 2. *McDonnell Douglas* Analysis

Even assuming *arguendo* that an employment relationship existed between PPC and the Hardens, the Hardens' ADEA claims nevertheless fail because the Hardens have not produced evidence sufficient to support those claims. Courts within the Fifth Circuit apply the burden-shifting framework set out in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), when analyzing age-discrimination claims at the summary-judgment stage. *See Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir.2010). Under that framework, the plaintiff-employee has the initial burden of establishing a prima facie case of age discrimination. *See Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir.2005). "To establish a prima-facie case of age discrimination, 'a plaintiff must show that (1) he was discharged; (2) he

was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age.'" *Jackson*, 602 F.3d at 378 (quoting *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir.2007)).

Next, the burden shifts to the defendant employer to produce evidence of a legitimate, nondiscriminatory reason for its adverse employment decision. *See Baker*, 430 F.3d at 753. Once the employer has done so, the burden returns to the employee to at least place in dispute whether the employer's proffered reasons are merely pretext for discrimination. *Id.* at 753–54. "Although intermediate evidentiary burdens shift back and forth under this framework, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Jackson*, 602 F.3d at 378 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

 With regard to Mrs. Harden's claim, there is no evidence on the record sufficient to support her allegations that PPC terminated its contract with her because of her age. In her deposition, when asked whether a PPC representative had "ever made a statement to [her] about being too old to continue growing chickens," she answered, "[n]o." (PPC's App. 173.) She also answered negatively when asked if she had any personal knowledge of a PPC representative's "ever saying anything to [her] about [her] age or asking when [she] planned to retire." (PPC's App. 187.) Instead, Mrs. Harden merely testified that "her husband felt that it was because of [their] age[s]" that PPC rejected their contracts and that to her "it

seemed to be reasonable that that would be the reason" for PPC's termination of her contract as well. (PPC's App. 172.) In view of this, the Court concludes that Mrs. Harden has failed to establish a prima-facie case of age discrimination.

■ Mr. Harden's ADEA claim also fails under the *McDonnell Douglas* framework. The facts offered by Mr. Harden in support of his allegations of age-based animus are limited to a couple of statements made in 2004 and 2008 by Brad Nance, the broiler manager of PPC's Dalton, Georgia complex. According to Mr. Harden, Nance visited the Hardens' farm in 2004, asked Mr. Harden his age, and stated that Mr. Harden was "old enough to retire." (PPC's App. 9.) On a second occasion, in early 2008, Nance apparently commented that Mr. Harden "couldn't compete with the new houses" and suggested that Mr. Harden just "go ahead and retire." (PPC's App. 10.) In addition to those two statements, contends Mr. Harden, Nance "would imply things all along." (PPC's App. 10.)

■ Given that PPC did not terminate Mr. Harden's contract until mid 2010, these facts are insufficient to establish a prima-facie case of age discrimination, particularly in the absence of any evidence that ties Nance to the decision to terminate the contract. But even assuming that Mr. Harden has established a prima-facie case, PPC has rebutted by producing evidence of legitimate reasons for its decision. First of all, the record establishes that the Hardens' farm was performing poorly and that their contracts with PPC permitted termination of their contracts "after a flock is settled and before a new flock is placed" and for economic necessity or material breach. (PPC's App. 16–19, 57, 75, 78, 89–90, 176–78, 193, 210–11.) In addition, PPC currently contracts with a number of chicken growers who are older than the Hardens. (PPC's App. 212–13, 216, 220–23.) And because Mr. Harden has not produced any evidence indicating that PPC's proffered reasons are pretextual or otherwise unworthy of credence (e.g., through evidence of inconsistent explanations by PPC), the Court concludes that Mr. Harden's ADEA claim is deficient as a matter of law.

### B. The Hardens' PSA Claims

■ PPC seeks summary judgment on the Hardens' PSA claims on the ground that they cannot show PPC engaged in "any unfair, unjustly discriminatory, or deceptive practice or device." 7 U.S.C.A. § 192(a). In the alternative, PPC contends that, even assuming the Hardens can make such a showing, their claims nevertheless fail because they cannot establish that PPC's rejection of their contracts produced an anti-competitive effect on the poultry industry. The Hardens offer no evidence or argument in response. They simply state, as they did in their motion to stay, that they filed a complaint with the Grain Inspection, Packers and Stockyards Administration ("GIPSA") and that GIPSA's investigation of their claims "remain[s] open." (Hardens' Resp. Br. 13.)

Section 192(a) of the PSA makes it unlawful for a live poultry dealer, such as PPC, to "[e]ngage in or use any unfair, unjustly discriminatory, or deceptive practice or device." 7 U.S.C.A. § 192(a). "Given the clear antitrust context in which the PSA was passed, the placement of § 192(a) and (b) among other subsections that clearly require anti[-]competitive intent or effect, and the nearly ninety years of circuit precedent," the United States Court of Appeals for the Fifth Circuit has "conclud[ed] that an anticompetitive effect is necessary for an actionable claim under the PSA." *Wheeler v. Pilgrim's Pride Corp.*, 591 F.3d 355, 362–63 (5th Cir.2009).

Thus, to survive summary judgment on a claim under § 192(a), a plaintiff must produce evidence that the defendant's actions had an anti-competitive effect on the relevant industry. *See id.*

After review of the record, it is evident that the Hardens have failed to produce such evidence. Indeed, as PPC points out, if anything, the Hardens have conceded they have no evidence that PPC's actions had an adverse effect on competition—even assuming PPC's actions were motivated by age-based animus. At his deposition, Mr. Harden indicated that PPC's decision to terminate his contract affected "just [him] personally." (PPC's App. 45–46.) Moreover, when asked whether he thought it was likely that PPC's actions would affect the poultry industry, his answer was "[p]robably not." (*Id.* at 46.) Mrs. Harden gave similar responses in her deposition. (*Id.* 189–90.) Therefore, because the Hardens have failed to place into dispute whether PPC's actions had an anti-competitive affect on the poultry industry, their PSA claims fail as a matter of law.

IV. Conclusion

Based on the foregoing, the Court concludes that the Hardens' ADEA and PSA claims fail as a matter of law.[4] Accordingly, PPC's motion for summary judgment is GRANTED. The Hardens' claims are, therefore, DISMISSED WITH PREJUDICE.

---

4. And because PPC is not liable to the Hardens, PPC's arguments concerning damages are moot.