Jose Leonel ALMANZA and Frances Al-
manza, as Natural Father and Mother
of Roy N. Almanza, Sr. (Deceased),
Plaintiffs,

and

Feliciana Almanza, Roy Almanza, Jr.,
and J[redacted] A[redacted],
Minor, Intervenors,

v.

Deputy Joe SALAZAR, Deputy J.R.
Villareal and County of Willacy,
Texas, Defendants.

Civil Action No. 1:11–CV–262.

United States District Court,
S.D. Texas,
Brownsville Division.

Signed Aug. 29, 2013.

Fabian Guerrero, Attorney at Law, Weslaco, TX, for Plaintiff Jose Leonel Almanza and Frances Almanza, as Natural Father and Mother of Roy N. Almanza, Sr. (Deceased).

Eileen M. Leeds, Ysmael Fonseca, Guerra, Leeds, Sabo & Hernandez, PLLC, Brownsville, TX, for Defendants Deputy JR Villarreal, Defendant Deputy Joe Salazar and Willacy County, Texas.

Juan Angel Guerra, Law Office of Juan Angel Guerra, Harlingen, TX, for Intervenor Feliciana Almanza, Individually and as Next Friend of J.A., a minor child, daughter of the decedent and Intervenor Roy Almanza, Jr., an Individual and Son of the Deceased.

## MEMORANDUM OPINION
## AND ORDER

ANDREW S. HANEN, District Judge.

Before the Court are Defendants' Motion to Dismiss [Doc. No. 25] and Defendants Deputy Joe Salazar and Deputy J.R. Villareal's Motion for Summary Judgment on Qualified Immunity [Doc. No. 26]. Having reviewed the motions and the applicable law, the Court hereby **GRANTS** them. Based on the pleadings currently before the Court, the Court holds that only § 1983 claims rooted in the deprivation of Fourth Amendment rights may lawfully be asserted, that any effort to hold the County liable under the doctrine of *respondeat superior* fails as a matter of law, and that insufficient facts have been pleaded to make a 42 U.S.C. § 1983 claim against the County plausible on its face. The Court additionally holds that Defendants Salazar and Villareal are entitled to qualified im-

munity with regard to the § 1983 claims against them in their individual capacities. As the Court dismisses or otherwise renders judgment on all federal claims asserted, the Court further declines to exercise jurisdiction over the remaining state law claims.

## I. BACKGROUND

This case arises out of an incident that occurred on January 2, 2010, whereby Deputy Sheriffs Joe Salazar and J.R. Villareal of the Willacy County's Sheriff's Department shot and killed Roy N. Almanza, Sr. (hereinafter "the decedent"). Frances Almanza, the decedent's natural mother, individually and acting on behalf of her son's estate, and Jose Leonel Almanza, the decedent's natural father (collectively "Plaintiffs"), filed suit against Deputies Salazar and Villareal, in their official and individual capacities, as well as against the County of Willacy, Texas, (the "County") through the Willacy County's Sheriffs Department (collectively "Defendants"), seeking to recover compensatory and punitive damages resulting from the decedent's death. The specific causes of action asserted in Plaintiffs' First Amended Complaint [Doc. No. 20] are cryptic and border on the indecipherable, but the Court nonetheless construes them broadly.

As against Defendants Salazar and Villareal in their individual and official capacities, Plaintiffs assert a 42 U.S.C. § 1983 claim for the use of such excessive force so as to violate the decedent's First, Fourth, Fifth, Eighth and Fourteenth Amendment rights. Plaintiffs also seek to hold the County liable for the actions of Defendants Salazar and Villareal pursuant to the doctrine of *respondeat superior*. Additionally, Plaintiffs assert a separate § 1983 claim against the County for failing to properly train Willacy County Deputy Sheriffs, including Defendants Salazar and Villareal. Lastly, as the natural father and mother of the decedent, Plaintiffs also assert the following Texas state law claims against all Defendants: "wrongful death, abuse of process, prima facie tort, conspiracy tort, negligence and gross negligence." [Doc. No. 20 at 8].

In June 2012, Feliciana Almanza, the decedent's widow, individually and as next friend of J[redacted] A[redacted], a minor child and the decedent's daughter, and Roy Almanza, Jr., the decedent's son, (collectively "Intervenors"), filed a motion to intervene in Plaintiffs' suit, which the Court granted shortly thereafter. Intervenors' federal claims mirror those asserted by Plaintiffs, except that Intervenors sue Defendants Salazar and Villareal only in their official capacities, they assert violations of only the Fifth, Fourth and Fourteenth Amendments of the United States Constitution, and they briefly reference injunctive as well as monetary relief. [*See* Pls.' Compl. in Intervention, Doc. No. 14].[1] Parallel to Plaintiffs, Intervenors appear to assert a wrongful death action against Defendants under Texas state law as well.

Defendants filed a Motion to Dismiss, [Doc. No. 25], and a subsequent Motion for Summary Judgment, [Doc. No. 26]. Local Rule 7.3 of the Southern District of Texas provides that Plaintiffs/Intervenors' re-

---

1. In the section titled "Jurisdiction and Venue" in their complaint, Intervenors purport to assert causes of action "pursuant to 42 U.S.C. § 1983 *and* 42 U.S.C. § 1985[.]" [Doc. No. 14 at 1 (emphasis added)]. However, under the section entitled "Factual Allegations," no allegations whatsoever are made concerning any conspiracy to interfere with civil rights and only § 1983 is cited. Therefore, this Court concludes that Intervenors are not pursuing a 42 U.S.C. § 1985 cause of action. Even if the claim were being pursued, moreover, it would be insufficiently pleaded. *See Bohannan v. Doe,* 527 Fed.Appx. 283, 300 (5th Cir.2013) (citing *Tebo v. Tebo,* 550 F.3d 492, 496 (5th Cir.2008)).

sponses to these motions were due to the Court in twenty-one days. No response, timely or otherwise, was ever filed. Although the Court is thus entitled to treat the motions as unopposed, *see* S.D. Tex. L.R. 7.4, the Court nonetheless analyzes the underlying merits of Defendants' motions below. *See Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir.2006) (citing *John v. State of Louisiana*, 757 F.2d 698, 709 (5th Cir.1985)) (trial court should not grant judgment solely by default on dispositive motion for failure to respond).

## II. DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss Plaintiffs/Intervenors' § 1983 claims against the County and § 1983 claims based on alleged violations of the First, Fifth, Eighth and Fourteenth Amendments against Defendants Salazar and Villareal for failure to state a claim upon which relief can granted. *See* Fed.R.Civ.P. 12(b)(6). Since the motion was filed after Defendants' answer and is thus untimely, the Court will construe the motion as a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir.1999); Fed.R.Civ.P. 12(c). "The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir.2007). The court must accept all well-pleaded facts in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court need not, however, accept mere conclusory allegations. *Id.* Pleadings that consist of only "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To survive a motion to dismiss,

the party seeking relief must state sufficient factual allegations to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007) (citing *Twombly*, 550 U.S. at 545, 127 S.Ct. 1955).

The Court first addresses Plaintiffs/Intervenors' claims against Defendants Salazar and Villareal based on any alleged violations of the First, Fifth, Fourth, Eighth and Fourteenth Amendments. First, as noted by Defendants, aside from the bare assertion that Defendants violated the decedent's First Amendment rights, "[t]here are no facts which support any plausible cause of action under the First Amendment." [Doc. No. 25 at 5].

Similarly, Plaintiffs have failed to plead a plausible violation of the decedent's Eighth Amendment rights. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. These protections are aimed at protecting the rights of convicted individuals, and are only properly invoked in instances where action is taken with intent to punish. *See Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (excessive force claims are judged by reference to specific constitutional standard that governs right at issue, such that excessive force to effect arrest is governed

by Fourth Amendment, whereas excessive force to subdue prisoner is governed by Eighth Amendment); *Whitley v. Albers*, 475 U.S. 312, 318, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ("The Cruel and Unusual Punishments Clause 'was designed to protect those convicted of crimes[.]' "). Since Plaintiffs' pleadings contain "no indication that the use of deadly force was intended to punish rather than to capture the suspect, there is no valid claim under the Eighth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 30–31, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

■ Plaintiffs/Intervenors' claims are not properly pleaded under the substantive due process protections embodied in the Fifth and Fourteenth Amendments either. *"[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Martinez–Aguero v. Gonzalez*, 459 F.3d 618, 623 (5th Cir.2006) (citing *Graham*, 490 U.S. at 395, 109 S.Ct. 1865). Thus, this Court finds that Plaintiff has failed to state a claim upon which relief can be granted with respect to any alleged violations concerning the decedent's First, Fifth, Eighth and Fourteenth Amendment rights, and all such claims are

hereby dismissed. Based on Plaintiffs' and Intervenors' factual allegations regarding the circumstances of the decedent's death, only claims rooted in the Fourth Amendment may be asserted as a matter of law.

■ Furthermore, Plaintiffs/Intervenors' claims against the County must similarly fail.[2] Two separate theories of liability against the County were put forth in Plaintiffs/Intervenors' pleadings: (1) a separate § 1983 claim for the County's alleged failure to train its Deputy Sheriffs, including Defendants Salazar and Villareal, in the appropriate use of force; and (2) a claim to hold the County liable for Defendants Villareal's and Salazar's actions under the doctrine of *respondeat superior*. The Supreme Court in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), flatly rejected Plaintiffs/Intervenors' latter argument. The Court explicitly held that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691, 98 S.Ct. 2018. *Monell* further held, however, that "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. 2018.

**2.** The Court's conclusions with respect to the County's liability are equally applicable to Plaintiffs/Intervenors' claims against Defendants Salazar and Villareal in their official capacities. *See Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). As the Court emphasized in *Hafer*, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* (quoting *Graham*, 473 U.S. at 165, 105 S.Ct. 3099). In light of the Court's holding in *Monell v. Department of*

*Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which provided for local government liability for § 1983 violations, official-capacity suits against officials of entities that are not considered part of the State for Eleventh Amendment purposes are no longer necessary. *See Graham*, 473 U.S. at 167 n. 14, 105 S.Ct. 3099 (contrasting official-capacity suits against local government officials with official-capacity suits against state officials, the latter of which do implicate Eleventh Amendment immunity and may only be brought under the doctrine of *Ex parte Young* ).

In *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Court applied *Monell* to a claim for constitutional violations allegedly resulting from the failure to train local government employees. The *Canton* Court held that the claim was actionable "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388, 109 S.Ct. 1197. This high degree of culpability, the Court explained, was most consistent with the Court's holding in *Monell* that a local government could only be held liable under § 1983 "where its policies are the moving force [behind] the constitutional violation." *Id.* at 388–89, 109 S.Ct. 1197 (internal quotation marks omitted). "[T]he focus must be on adequacy of the training program in relation to the tasks the particular officers must perform," and merely showing that a particular officer may be unsatisfactorily trained, or proving that a particular injury or accident could have been avoided with more or better training, is insufficient in this regard. *Id.* at 390–91, 109 S.Ct. 1197. Moreover, the party seeking relief must also prove that the identified inadequacies in the training program actually caused the injury in question. *See id.* at 391, 109 S.Ct. 1197 ("the identified deficiency in a city's training program must be closely related to the ultimate injury ... respondent must still prove that the deficiency in training actually caused the police officers' indifference...."). *See also Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ("plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.").

▮ To sufficiently plead a § 1983 failure to train claim, a party must therefore plead sufficient facts so as to make the following plausible: (1) that a local government's training policy procedures were inadequate, (2) that the government was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused the decedent's death. *See Sanders–Burns v. City of Plano,* 594 F.3d 366, 381 (5th Cir.2010). With regard to the first element, the party must first identify a "policy statement, ordinance, regulation or decision that is officially adopted," or "a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy," *Id.* at 380.[3] "[A] plaintiff must [also] allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir.2005). A plausible showing with respect to the second element— the County's "deliberate indifference"— usually requires pleading a pattern of similar constitutional violations as the injury for which a party is seeking relief. *See Bryan,* 520 U.S. at 409, 117 S.Ct. 1382 ("pattern of injuries ordinarily necessary to establish municipal culpability and causation."). "In addition, the existence of a pattern ... may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer in-

---

**3.** In rare circumstances, "a final decisionmaker's adoption of a course of action tailored to a particular situation and not intended to control decisions in later situations' [*sic* ] may, in some circumstances, give rise to municipal liability under § 1983." *Sanders–Burns,* 594 F.3d at 380–81. There are no allegations in Plaintiffs/Intervenors' pleadings that a final decisionmaker authorized the use of fatal force against the decedent.

volved in a particular incident, is the 'moving force' behind the plaintiff's injury." *Id.* at 407–08, 117 S.Ct. 1382. "[T]he possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability[,]" has not, however, been foreclosed. *Id.* at 409, 117 S.Ct. 1382 (citing *City of Canton,* 489 U.S. at 390, 109 S.Ct. 1197). Such a possibility would be present, for instance, in the case of a local government "that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Bohannan v. Doe,* 527 Fed.Appx. 283, 300 (5th Cir.2013) (citing *Connick v. Thompson,* —— U.S. ——, 131 S.Ct. 1350, 1361, 179 L.Ed.2d 417 (2011)).

■ Nevertheless, Plaintiffs/Intervenors' claims against the County here must fail because sufficient facts have not been pleaded to make it plausible that the alleged deficiencies in the County's training procedures were the "moving force" behind the decedent's alleged deprivation of his Fourth Amendment rights. The pleadings indicate that "the wrongful death of Roy N. Almanza, Sr. was consistent with an institutionalized practice of the County ... which was known and ratified by Defendants having at no time taken any effective action to prevent the Willacy County Sheriff's Deputies from continuing to engage in such action." [Doc. No. 20 at 4; Doc. No. 14 at 3–4]. First, "Plaintiffs cannot prevail by styling their complaints about the specific injury suffered as a failure to train claim." *Roberts,* 397 F.3d at 293. Even assuming, moreover, that Plaintiffs/Intervenors' claim fits the single-incident exception outlined above, they

must still allege the inadequacies of the training program with sufficient particularity, *see Roberts,* 397 F.3d at 293, and make a plausible showing that these specific inadequacies were the "moving force" behind the specific constitutional deprivation that Plaintiffs/Intervenors are claiming the decedent suffered, *see Bryan,* 520 U.S. at 404, 412, 117 S.Ct. 1382 (connection between local government policy and specific constitutional violation alleged must be strong).

The bare assertion that the County failed to instruct its officers "in applicable provisions of the Texas State Penal Code, Texas State Constitution, United States Constitution and with proper and prudent use of force," [Doc. No. 20 at 4; Doc. No. 14 at 4], is insufficiently tied to the specific injury at the heart of the Plaintiffs/Intervenors' suit, that is, the use of deadly force to subdue a suspect in violation of the decedent's Fourth Amendment rights. The Supreme Court's reasoning in *Board of the County Commissioners of Bryan County, Oklahoma v. Brown* is instructive in this regard. In *Bryan,* the Supreme Court considered whether *Monell* liability could attach to a county officer's use of excessive force, when the officer had been hired by the Sheriff despite the officer's questionable background. *Id.* at 401, 117 S.Ct. 1382. Assuming without deciding that the county could be held liable based on a single hiring decision, the Court vacated the judgment against the County because the evidence was insufficient to support a finding that the hiring decision was made in disregard of a known and obvious risk that excessive force would be used by the officer in question. *Id.* at 412–16, 117 S.Ct. 1382. As explained by the Court, "a finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* officer

was highly likely to inflict the *particular injury* suffered by the plaintiff." *Id.* at 412, 117 S.Ct. 1382. Applying the principles of *Bryan* to the case at bar, Plaintiffs/Intervenors must plead *specific* deficiencies in the County's training policy and that *these particular alleged deficiencies* were highly likely to result in *the use of fatal force during the course of an arrest in violation of the Fourth Amendment.* It is insufficient in this regard to plead that the County's training program was generally inadequate regarding the "proper and prudent use of force," without at the very least specifying with particularity a lack of training on the standards that were allegedly violated by the actions of Defendants Salazar and Villareal during the incident in question. Moreover, the mere probability that a lack of general training on the use of force will result in a myriad of constitutional violations is simply not sufficiently connected to the alleged constitutional deprivation at issue in *this* case, and without that link, there is no plausible showing that the County's policy was the "moving force" behind the decedent's death. If Plaintiffs/Intervenors were claiming that the County did not sufficiently instruct its officers on the use of fatal force to effect an arrest or on the manner in which to properly subdue a mentally ill individual, Plaintiffs/Intervenors should have pleaded that. Instead, the pleadings contain only vague, conclusory allegations. For this Court to assume based on the pleadings that the lack of general instruction on the "proper and prudent use of force" included a lack of training on the very constitutional standards that Defendants Salazar and Villareal allegedly violated, and that these violations played a role in causing the decedent's death, would amount to mere speculation. This is especially true in the instant case since this Court ordered Plaintiffs to replead with specificity their causes of action. [*See* Doc. No. 9]. While Plaintiffs did file a First Amended Complaint as ordered, the failure to train allegation is the same in the First Amended Complaint, [*see* Doc. No. 20 at 4], as it was in the Original Complaint, [*see* Doc. No. 1 at 3–4]. Merely repeating the same allegation in a second pleading does not comply with this Court's order.[4] The factual allegations pleaded by Plaintiffs/Intervenors in their § 1983 claims against the County are thus not sufficient to allow this Court to draw the reasonable inference that the County is liable for the misconduct alleged, and the Court accordingly dismisses them for failing to state a claim upon which relief can be granted.

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Ordinarily, the court would "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence

---

4. The Original Complaint with respect to failure to train alleged "The failure to properly train Defendants, including failure to instruct them in applicable provisions of the Texas State Penal Code, Texas State Constitution, United States Constitution and with proper and prudent use of force." [Doc. No. 1 at 3]. The First Amended Complaint's allegation concerning failure to train alleged "The failure to properly train Defendants, including failure to instruct them in applicable provisions of the Texas State Penal Code, Texas State Constitution, United States Constitution and with proper and prudent use of force." [Doc. No. 20 at 4]. These two pleadings are remarkably the same. The Intervenors merely parrot the same language. [Doc. No. 14 at 4].

of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The undisputed record currently before the Court therefore establishes the following: on January 2, 2010, Defendant Villareal was dispatched to the decedent's home on a domestic disturbance call. [Voluntary Statement of the Accused, Joe Richard Villareal to Texas Ranger Mike Ramirez, Doc. No. 27–6]. After Defendant Villareal arrived, he observed that the decedent was armed with a firearm and radioed for assistance. [*Id.*] Defendant Salazar responded to the call for assistance. [*Id. See also* Voluntary Statement of the Accused, Jose Antonio Salazar to Texas Ranger Mike Ramirez, Doc. No. 27–5]. At some point, the decedent drew his firearm and began to walk towards Defendants Salazar and Villareal. [*See* Doc. Nos. 27–5, 27–6]. He did not respond to any warnings to drop the weapon but instead continued to advance. [*See* Doc. Nos. 27–5, 27–6]. Both Defendants Salazar and Villareal feared for their and each other's safety. [*See* Doc. Nos. 27–5, 27–6]. Defendant Salazar then observed the decedent pull back the slide on the pistol and chamber a round; and when the decedent began to raise the firearm, Defendant Salazar opened fire. [Doc. No. 27–5]. After the shots were fired, Defendant Villareal saw that the decedent continued standing and was still holding the gun. [Doc. No. 27–6]. According to Defendant Villareal, "I felt that our lives were still threatened, and I shot two rounds at Roy before he fell forward." [*Id.*]

▆▆▆▆ Defendants Salazar and Villareal move for summary judgment on the basis of qualified immunity.[5] [*See* Doc. No. 26 at 3]. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)) (internal quotation marks omitted). Once a qualified immunity defense is invoked, the burden then shifts to the plaintiff to show that "the defendants committed a constitutional violation under current law[,]" and that "the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir.2009). Since Plaintiffs never filed a response, it is unmistakably clear that they have not carried this burden. Thus, Defendants Salazar and Villareal are entitled to qualified immunity on Plaintiffs' § 1983 claims against them in their individual capacity.

## IV. CONCLUSION

Plaintiffs/Intervenors aver that this Court has jurisdiction over this matter pursuant to 42 U.S.C. § 1331. [Doc. No. 20 at 1; Doc. No. 14 at 2]. By virtue of this order, however, none of Plaintiffs/Intervenors' federal claims remain for trial. All causes of action alleging violations of the decedent's First, Fifth, Eighth and Fourteenth Amendment rights of the United States Constitution are hereby **dismissed**. The Court similarly **dismisses** Plaintiffs/Intervenors' claims against the Coun-

---

**5.** The defense of qualified immunity may only be invoked as against Plaintiffs' claims against Defendants Salazar and Villareal in their personal/individual capacities. *See Graham*, 473 U.S. at 166–67, 105 S.Ct. 3099.

With respect to the claims against them in their official capacities, the Court's conclusions regarding the County's liability control. *See supra* note 2.

ty, first as a matter of law with respect to any *respondeat superior* liability, and second, for failing to state a claim upon which relief can be granted concerning any failure to train. Finally, the Court hereby renders summary judgment in favor of Defendants Salazar and Villareal based on their qualified immunity to the only remaining § 1983 causes of action.

Thus, as all federal claims have been hereby eliminated before trial, the Court declines to exercise its supplemental jurisdiction over the remaining state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("if the federal claims are dismissed before trial ... state claims should be dismissed as well."). *See also* 28 U.S.C. § 1367(c)(3) (court may decline to exercise jurisdiction if it "has dismissed all claims over which it has original jurisdiction...."). The Court accordingly **dismisses** all of Plaintiffs/Intervenors' state law claims **without prejudice** to refiling of same in an appropriate state court.

The Court further **ORDERS** all scheduled hearings in this matter cancelled.